HUGH McINTYRE v. THE MICHIGAN STATE INSURANCE COMPANY.

*Insurance—Payment of premium note—Evidence—Laches.*

1. Where an insured person gives a premium note in payment of his policy he is bound to attend to its payment himself at maturity and is not excused by the non-presentation of the note especially if it specified no place of payment.

2. The presumption that a note which specifies no place of payment is to be paid at the residence of the person liable upon it, is one that applies to indorsers.

3. The conditions prescribed by an insurance policy as to the payment of a premium note cannot be waived by an insurance agent if the policy expressly stipulates that they shall not be.

4. In an action on an insurance policy plaintiff sought to meet the de-

fence that the premium note had never been paid by showing that the agent of the insurance company had told him the company had given him, the agent, credit for the note. The plaintiff's further offer to show that he understood this to mean that the agent had paid the note was properly excluded as mere inference; and the agent's statement to that effect, if made after the fact, would have been mere hearsay.

5. A provision in the policy of a domestic insurance company that omission to sue for twelve months after a loss should be conclusive against the validity of the claim is not suspended for the period occupied in attempting to sue in foreign jurisdictions.

Error to Sanilac. (Wixson J.) Oct. 31.—Dec. 20.

Assumpsit. Plaintiff brings error. Affirmed.

*Geo. P. Voorheis* and *A. R. Avery* for appellant. The place to pay a note, if not specified, is at the maker's residence: Story on Promissory Notes § 235; *Taylor v. Snyder* 3 Den. 145; *Bank of America v. Woodworth* 18 Johns. 315; *Pendleton v. Knickerbocker Ins. Co.* 7 Fed. Rep. 169; an insurance agent who advances payment to the company and takes the note of the insured and negotiates it does not relieve the company from liability: *Hodsdon v. Guardian Ins. Co.* 97 Mass. 144; *Home Ins. Co. v. Curtis* 32 Mich. 402; *Ag'l Ins. Co. v. Montague* 38 Mich. 548; a limitation on suits upon insurance policies is against public policy; *Eagle Ins. Co. v. Lafayette Ins. Co.* 9 Ind. 443; *Grant v. Lexington Ins. Co.* 5 Ind. 23.

*Millard, Weaver & Weaver* for appellee. It is the duty of the debtor to seek his creditor and pay his debt when it becomes due: Story on Prom. Notes 228, 230; Chitty on Bills (8th ed.) 391-2; *Wallace v. M'Connell* 13 Pet. 136; as against the maker of a note, it is not necessary to allege or prove presentment or demand of payment, even when the note is made payable at a particular place: *Reeve v. Pack* 6 Mich. 240; an insurance agent authorized to receive applications and collect and remit premiums, but not authorized to issue policies, has no power to extend the time of payment of renewal premiums: *Critchett v. Am. Ins. Co.*

53 Iowa 404; *Bouton v. Am. Mut. Life Ins. Co.* 25 Conn. 542; *Marvin v. Univ. Life Ins. Co.* 85 N. Y. 278; *Waynesboro Mut. F. Ins. Co. v. Conover* 98 Penn. St. 384; *Guernsey v. Am. Ins. Co.* 17 Minn. 104; *Catoir v. Am. Life Ins. & Trust Co.* 33 N. J. L. 487; even a promise that the "note might lay over for a few days," would not be a waiver of the forfeiture: *Wall v. Home Ins. Co.* 36 N. Y. 157; *Thompson v. Knick. Life Ins. Co.* 104 U. S. 252; the waiver by an insurance company of its right to declare a policy void because the note given for the premium was not paid at maturity, does not preclude the company from insisting upon the condition in the policy declaring the same void, if the premium note is past due and unpaid at the time of loss: *Ferebee v. N. C. Ins. Co.* 68 N. C. 11; a custom of an insurance company not to demand punctual payment of a premium note at the day, is a mere matter of voluntary indulgence, and not a permanent waiver of the clause of forfeiture, or an agreement to do the same in future: *Thompson v. Knickerbocker Life Ins. Co.* supra.; limitations as to the time within which action may lie on an insurance policy are sustained in *Riddlesbarger v. Hartford Ins. Co.* 7 Wall. 386; *Ripley v. Ætna Ins. Co.* 30 N. Y. 136; *Cray v. Hartford Ins. Co.* 1 Blatch. 280; *Fullam v. N. Y. Union Ins. Co.* 7 Gray 61; *Portage County Mut. Ins. Co. v. West* 6 Ohio St. 599; *Patrick v. Farmer's Ins. Co.* 43 N. H. 621; *Dutton v. Vermont Mut. F. Ins. Co.* 17 Vt. 369; *Williams v. Vermont Mut. Ins. Co.* 20 Vt. 222; *Wilson v. Ætna Ins. Co.* 27 Vt. 99; *Brown v. Roger Williams Ins. Co.* 5 R. I. 394; *McFarland v. Ætna Ins. Co.* 6 W. Va. 437; *Keim v. Home Mut. Ins. Co.* 42 Mo. 38; *Carraway v. Merch. Mut. Ins. Co.* 26 La. Ann. 298; *Brown v. Savannah Mut. Ins. Co.* 24 Ga. 97; *Merch. Mut. Ins. Co. v. Lacroix* 35 Tex. 249; *Provincial Ins. Co. v. Ætna Ins. Co.* 16 U. C. (Q. B.) 135; *Johnson v. Humboldt Ins. Co.* 91 Ill. 92; *Lynskey v. Asylum Life Ass. Co.* 9 Ir. L. R. 299; *Ketchum v. Protection Ins. Co.* 1 Allen 136; *Woodbury &c. Bank v. Charter Oak Ins. Co.* 31 Conn. 517; *Carter v. Humbolt Ins. Co.* 12 Iowa 287;

*Stout v. City &c. Ins. Co.* 12 Iowa 371; *Roach v. N. Y. Ins. Co.* 30 N. Y. 546; *N. W. Ins. Co. v. Phœnix Oil &c. Co.* 31 Penn. St. 448; *Underwriter's Agency v. Sutherlin* 55 Ga. 266; *DeGrove v. Metropolitan Ins. Co.* 61 N. Y. 594; *Wilkinson v. First Nat. F. Ins. Co.* 72 N. Y. 499.

GRAVES, C. J.   The plaintiff was insured by defendant in 1878 in the sum of $600, and on the 21st of July, 1879, he procured another policy from the company for $1700.   It was for three years, and covered his barn and certain other property.   He paid the premium by his note made in these terms:

"$17.                    FREMONT, MICH., July 21, 1879.

In 90 days, for value received in insurance by the Michigan State Insurance Company, I promise to pay to the order of the secretary of the company the sum of seventeen dollars, with interest.                    HUGH McINTYRE."

The business was transacted by the company through its local agent, Mr. James Brown of Brockway Centre, a place near to the insured property and to the plaintiff's residence. The note was handed to Brown on his delivering the policy. Among the provisions in the policy was one requiring payment of the premium note at maturity, and another prescribing that in case of any action commenced against the company more than twelve months subsequent to a loss, the lapse of time should be taken as conclusive evidence of the invalidity of the claim.   The words of the provision first named are as follows:

"A promissory note given for such premium shall be deemed the payment of the premium until said note shall become due; but in case said note shall not be paid when due then this policy shall be void and of no effect, and shall continue void until the payment of said note.   And when paid, if before a loss, this policy shall be in force and effect until its expiration, subject to the conditions therein contained."

A secondary provision was inserted to preclude any deviation from the express terms except by an explicit stipulation with defendant's secretary.   It reads as follows:

"There shall be no revision or evasion of any of the

terms or conditions of this policy, and no agent or servant of this company has any right or power to waive or to dispense with any of the terms or conditions of insurance as printed or contained in the application or in this policy, excepting that the same is done by the concurrence of the secretary of the company, indorsed hereon or otherwise specifically acknowledged in writing by him."

These clauses were not covertly inserted. They did not enter the contract by a back door. They were heralded by the application itself, in that the plaintiff declared as follows:

"I hereby further agree that the policy of insurance based on this application shall be void if the premium or note or any part thereof given for the same remains unpaid at the time agreed upon, and acknowledge myself indebted for the full amount of the premium or note given for the policy issued on this application. This application is made after a full knowledge to me that no agent of said company has any authority to waive or dispense with true answers to all the above questions or with any provision of this application or the policy."

Moreover, it is admitted by the plaintiff that on the execution of the policy his attention was expressly directed to this clause for avoiding it for non-payment of the note, and that in answer to his observation that he thought it did not amount to much, the agent Brown remarked that he thought it did.

About the close of 1879 the defendant withdrew from insurance and reinsured its risks in the Home Insurance Company of New York, and on the 1st of January, 1880, it notified its policy holders, including plaintiff, thereof. August 11, 1880, the plaintiff incurred a loss within the words of the first policy and also of this, and on the 7th of September he exhibited the proper proof.

The premium note on this last policy had never been paid. It had remained in Brown's hands in order that the plaintiff might take it up, and subsequent to the loss the latter offered to pay it, but the agent refused to accept payment. The defendant paid the loss covered by the policy of 1878, but declined to pay anything on the policy of 1879.

In March, 1881, the plaintiff commenced a suit in the court below, but the same was regularly dismissed for want of jurisdiction. The plaintiff then assigned the policy to a brother residing in the territory of Dakota for the mere purpose of having a suit instituted in a Federal court in his name, and in August, 1881, the suit so had in view was commenced, but in November following the court dismissed it for want of jurisdiction. November 30, 1881, the policy was reassigned to the plaintiff, and by reason of State legislation, which meanwhile had taken place, he was enabled to sue in the court below, and he thereupon commenced the present action. The period between the loss and the time of the beginning of this suit was much more than twelve months. The circuit judge expressed himself as satisfied that the failure to pay the note was fatal to the action, and he directed a verdict in favor of the defendant. He further observed that he was not certain that the application of the clause cutting off suits instituted after twelve months would not depend on whether the two actions commenced without jurisdiction were or were not brought in good faith.

It is perfectly clear that the plaintiff never offered to pay the note until subsequent to the loss. But he contends that no offer was necessary to preserve the policy from suspension. He insists that by legal effect the note was only demandable at his residence, and that it was incumbent on defendant to make a call there for payment before setting up the fact of non-payment as a ground of suspension.

This is not a tenable position. The doctrine indicated relates to the case of indorsers, whom, as being under engagements for the debts of others, the law so far favors as to require some preliminary effort to get payment from the party primarily liable. The reason of the rule does not fit the case of maker and payee, and hence the rule itself does not apply. As between the latter parties the maker is bound to seek the payee and offer payment, and so the plaintiff understood the obligation. He looked upon the transaction as one which required him to follow the note,

and not as a contract which permitted him to remain passive and to pay only on being called on at his house. He was under no misapprehension, and the fact that the note was yet unpaid on the occurrence of the loss was owing to no fault or failure of duty on the part of the defendant. The instrument might have been drawn payable at the plaintiff's residence, but he did not elect to require it. He made it payable generally, and the form of the undertaking expresses the intent. He bound himself to seek the payee or holder, and mere possession of the money at his house with the will to pay it could avail nothing in point of law. His undertaking went further. No demand on him by the defendant was necessary to make the note either due or suable. Mere non-payment was default, and no facts arose to excuse it. *Thompson v. Insurance Co.* 104 U. S. 252.

This view of the case being unsustained, the plaintiff next urges that there was evidence for the jury to pass on that the agent Brown consented that the policy should operate to cover losses without payment of the note. There are two answers to this argument. The *first* is that it was made an express term of the transaction that the conditions should not be waived or varied by means of any act or assent of Brown. The *second* is that there was no evidence fairly tending to show that he consented to anything of the kind.

A further point may be referred to. It is said that the plaintiff undertook to show that the note was actually paid by the agent Brown, but was forbidden to make the proof. The plaintiff, testifying for himself, stated that he had a talk with the agent Brown subsequent to the fire, and that Brown then told him that the company had given him, Brown, credit for the note. The plaintiff's counsel then offered to show by the plaintiff that the latter in that conversation understood Brown as meaning that he had paid the note, and the court, under objection, ruled out the offer. The ruling was unobjectionable. The proposal was to have the plaintiff testify concerning how his mind operated under the agent's statements, and not to show what it was that the agent said.

His construction of the agent's meaning may have been not only unauthorized, but entirely unreasonable. But suppose that the purpose was to get a disclosure of the language which the agent used. It was a call for mere hearsay. The agent must have been speaking of a past event, and not of a matter which was then occurring. This is not all, however. The agent was himself subsequently called by the plaintiff and fully examined on the subject. And, moreover, the claim that he had paid the note was destitute of foundation.

The proper effect due to the provision against actions instituted after twelve months from a loss requires no special consideration. In view of the facts in this record we are not ready to share in the doubts felt by the circuit judge, and we cannot admit that it was at all material whether in proceeding without jurisdiction to launch the other cases the plaintiff acted in good faith. The defendant was a domestic corporation and accessible always to domestic process, and the delay in bringing this suit was exclusively owing to the plaintiff's purpose to subject it to a forum where it was not suable, and to which the law had refused jurisdiction over it. See *Arthur v. Homestead Fire Ins. Co.* 78 N.Y. 462; *Riddlesbarger v. Hartford Ins Co.* 7 Wall. 386.

There is nothing to impeach the result and the judgment must be affirmed with costs.

The other Justices concurred.