FARMERS' AND MERCHANTS' MUTUAL LIFE ASSOCIATION v. MASON.

[No. 9,264. Filed June 21, 1917.]

1. INSURANCE.—*Life Insurance.—Premiums.—Payment by Note.*—The payment of an insurance premium by note may be either absolute or conditional, depending on the intention of the parties at the time of the execution of the note, and the intention may be expressed in the policy, or in the note itself. p. 74.

2. INSURANCE.—*Life Insurance.—Payment by Note.—Effect.*—A nonnegotiable note given for insurance premiums was merely a conditional, and not an absolute, payment, where a provision in the insurance certificate designated payment by note as an attempted payment, the insurer's receipt was given for the note and not for the premium, and there was no evidence of an agreement that the note was to be accepted as absolute payment of the premiums for which it was given. pp. 74, 75.

3. BILLS AND NOTES.—*Negotiability.—Statutes.*—A note executed prior to the Negotiable Instruments Act, §9089a et seq. Burns 1914, Acts 1913 p. 120, and not payable in a bank in this state, is nonnegotiable. p. 75.

4. INSURANCE.—*Life Insurance.—Premiums.—Payment by Note.—Policy Provisions.—Scope and Effect.*—Provisions in a policy of insurance in reference to the payment of premiums by note need not be incorporated in the note to make such provisions effective. p. 77.

5. INSURANCE.—*Life Insurance.—Forfeitures.—Payment of Premiums by Notes.*—An insurance certificate providing that it

shall be incontestable after two years, except for the nonpayment of premiums, may be contested after such period on the ground that a note given for premiums past due was not paid, where the note was not accepted as absolute payment, but merely operated to extend the time for payment, so that failure to pay the note was failure to pay the premiums for which it was given.  p. 78.

6.  INSURANCE.—*Contracts.*—*Construction.*—An insurance certificate should be construed as a whole, and, if possible, every part thereof given effect.  p. 79.

7.  INSURANCE.— *Life Insurance.*— *Policy.*— *Construction.*— *Forfeitures.*—A provision in a certificate of insurance that the certificate should be incontestable after two years, except for nonpayment of premiums, is not in conflict with a forfeiture clause providing for the lapsing of a certificate where a note given in payment of a premium is not paid, as the provisions, when construed together, mean that the certificate may be contested after two years for the nonpayment of premiums or notes given therefor.  p. 80.

8.  INSURANCE. — *Life Insurance.*—*Policy.*—*By-Laws.*—*Construction.*—Whether an insurance association's by-law as to the lapsing of an insurance certificate is unenforceable as being too indefinite is immaterial, where the situation is definitely covered by a provision in the certificate itself.  p. 80.

9.  INSURANCE.—*Life Insurance.*—*Forfeitures.*—*Retention of Unpaid Premium Note.*—An insurance company did not waive a provision forfeiting the policy for nonpayment of premiums by merely retaining an unpaid note given for premiums, where the insurer made no effort to collect the note, or to assert it, as an obligation against the insured or his estate, and refused to accept payment from the beneficiary after the death of the insured.  pp. 81, 83. '

10.  INSURANCE.—*Forfeitures.*—*Payment of Premiums.*—*Waiver.*—A provision in an insurance certificate for forfeiture for nonpayment of a premium or a premium note, being for the benefit of the insurer, may be waived by it.  p. 82.

11.  INSURANCE.—*Life Insurance.*—*Forfeitures.*—*Nonpayment of Premium.*—The fact that an insurer sometimes applied commissions due from it to the insured for premiums owed by him is not sufficient evidence that it waived the forfeiture provided · by the terms of the policy for nonpayment of premiums as regards premiums due and unpaid at a time when insured had no commissions to his credit, since the insurer was under no obligation to await the accumulation of commissions which could be applied to the payment of delinquent premiums. pp. 84, 86.

12. INSURANCE. — Forfeiture.—Waiver. — Definition.—Waiver is where one in possession of any right, whether conferred by law or by contract, and with full knowledge of material facts, does or forbears the doing of something inconsistent with the existence of the right or his intention to rely upon it. p. 86.

13. INSURANCE.—Life Insurance.—Forfeiture for Nonpayment of Premiums.—Estoppel.—An insurer is not estopped from asserting a forfeiture, as provided in the policy, for nonpayment of premiums because commissions earned by insured in selling insurance had at times been applied on premiums due from him, and because he had been reinstated on payment of delinquent premiums, where no premiums had been paid in commissions during the last fifteen months preceding the death of the insured, and he had been required to furnish a certificate of good health on several occasions as a condition precedent to reinstatement after failure to pay premiums when due. pp. 88, 91.

14. INSURANCE. — Forfeiture for Nonpayment of Premiums. — Estoppel.—An insurer will be estopped to insist upon a forfeiture, if, by an agreement, either expressed or implied by the course of its conduct, it leads the insured to believe that his premiums will be received after the appointed day. p. 88.

15. INSURANCE. — Life Insurance. — Accepting Delinquent Premiums.—Waiver.—An insurer's occasional voluntary indulgence in accepting delinquent premiums, in the absence of an express or implied agreement to waive payment of assessments according to the conditions of the contract, cannot be construed as a permanent waiver, or as depriving the company of the right to insist upon a forfeiture, or to cancel its policy on account of the failure to pay according to the stipulations therein. p. 90.

16. INSURANCE.— Policy.— Forfeiture Clauses.— Construction.— Though forfeitures are not favored by the law, courts must enforce them when the party by whose fault they are incurred cannot show some good ground in the conduct of the other party on which to base a reasonable excuse for the default. p. 91.

17. INSURANCE.—Life Insurance.—Policy Provisions.—Waiver.— Evidence.—Admissibility.—In an action on a life insurance policy, which required, as a condition precedent to reinstatement when a policy had lapsed for nonpayment of premiums, that insured should furnish a satisfactory certificate of good health, where the jury was required to determine whether the policy had been reinstated by the insurer's acceptance of a note for delinquent premiums for a period up to a certain date, a postal card from the insurer to the insured notifying him

that another premium, payable in advance, was due on such date was admissible on the question of whether the requirement as to the certificate of good health had been waived by the insurer, there being no evidence that such certificate had been furnished. p. 92.

18. INSURANCE.—*Life Insurance.—Evidence.—Receipts of Premium Payments.—Admissibility.*—In an action to recover on a life insurance policy, receipts executed by the insurer showing the payment of premiums by insured are admissible as tending to show that insured had performed his part of the contract. p. 92.

19. INSURANCE. — *Life Insurance.—Action on Policy. — Instructions.—Ignoring Evidence.—Nonpayment of Premiums.*—In an action on a certificate of insurance, an instruction that, if insured executed a note in payment of all premiums up to specified date, and the insurer accepted such note as payment, the insured might recover, was erroneous as ignoring the fact that under the provisions of the certificate it might lapse if the note was not paid. p. 92.

20. INSURANCE.—*Life Insurance.—Action on Policy.—Instructions.*—In an action on an insurance certificate, an instruction that the insured's acceptance of a note for delinquent premiums kept the certificate in full force up to a specified date, and that insured could keep it alive by paying the premium due immediately after such date, was erroneous as ignoring the possibility that under the provisions of the certificate it might lapse upon nonpayment of the note. p. 93.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Elizabeth Mason against the Farmers' and Merchants' Mutual Life Association. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Lucius C. Embree* and *Morton C. Embree,* for appellant.

*John R. Brill, Frank H. Hatfield* and *John W. Brady,* for appellee.

BATMAN, J.—On May 30, 1910, appellant issued a certificate on the life of Ulysses G. Mason in the sum of $1,000, in consideration of the payment of quarterly premiums of $4.91 on the first days of January, April, July, and October in each year, in which appellee, the wife of the insured, was named as the beneficiary. The

insured died on April 28, 1913, and appellee filed her complaint in the court below in three paragraphs, to recover on said certificate. The first paragraph was dismissed, and trial was had on issues formed on the second and third paragraphs. As no question is presented in this court on the sufficiency of the pleadings, we will only briefly indicate their contents. The first paragraph of the complaint alleges in substance, among other things, the issuance of the certificate, the death of the insured, and the performance on the part of appellee and the insured of all the conditions of said policy on their part to be performed, while the second paragraph excepts from such performance the payment of a portion of such premiums in cash, alleges the execution of promissory notes in payment of such portions, that such promissory notes were accepted by appellant in lieu of cash, and that it thereby waived the requirement of said certificate in that regard. A copy of the certificate was filed with each of said paragraphs of complaint and made a part thereof.

Appellant filed its answer in one paragraph in which it admitted the execution of the certificate of insurance mentioned in the complaint, and that at its inception it constituted a valid contract, but alleged facts to show that such certificate had lapsed, prior to the death of the insured, by reason of the nonpayment of a note given for premiums.

Appellee filed a reply in two paragraphs. The first was a general denial. The second alleges facts on which it bases a claim that all premiums on such certificate had been fully paid, except the quarterly premium due April 1, 1913, and that the insured died within the thirty days of grace allowed for its payment. It also alleges that at the time of the insured's death appellant owed him a sufficient amount of commissions to pay

all premiums on said certificate, which should have been credited thereon, and that appellant had theretofore accepted from the insured other notes for various quarterly premiums.

There was trial by jury, resulting in a verdict for appellee for $1,078, and judgment was rendered accordingly. Appellant filed a motion for a new trial, which was overruled. This action of the court below is the only assigned error presented by appellant in its brief as cause for reversal. Appellant alleges as reasons for a new trial that the verdict of the jury is contrary to law; that it is not sustained by sufficient evidence; that the amount of recovery is too large; that the court erred in the admission of certain evidence, and in giving and refusing certain instructions.

The undisputed evidence shows the following facts: The certificate in suit was issued by appellant on May 30, 1910. Quarterly premiums thereon in the sum of $4.91 were to be paid in advance on the first days of January, April, July, and October of each year. All premiums were paid to and including September 30, 1912. Default was made in the payment of the quarterly premium which fell due on October 1, 1912. Said premium was still in default on December 14, 1912, when appellant accepted the promissory note of the insured for $4.91, due thirty days after said date for the amount of the same. Default was also made in the payment of the quarterly premium which fell due on January 1, 1913, and also in the payment of said note at its maturity. Both remaining unpaid on February 4, 1913, appellant surrendered said note, and accepted another promissory note of the insured for the amount of said first note, and said premium which fell due on January 1, 1913, as follows:

"$9.82                    Princeton, Ind., Feb. 4, 1913.

"Thirty days after date, I promise to pay to the order of the Farmers and Merchants Mutual Life Association, of Princeton, Ind., the sum of Nine and 82-100 Dollars, together with interest thereon at the rate of 6 per centum per annum from date until paid and with Attorney's fees, all payable without any relief from valuation and appraisement laws, for value received.

"Payable at Home Office, Princeton, State of Indiana.

"Due March 4, 1913.

                                    "U. G. Mason."

At the time appellant accepted said note it delivered to the insured a receipt as follows:

"Farmers & Merchants Mutual Life Association.
            "Certificate No. 808.
                    "Princeton, Ind., Feb. 4, 1913.
"Received of U. G. Mason, note for $4.91 dues for the quarter ending April 1, 1913.
                    "W. S. Hastings, Secretary."

No part of said note has been paid, and no offer was made to pay the same prior to the insured's death, but the same is still retained by appellant. The quarterly premium of $4.91, which fell due on April 1, 1913, has never been paid. The insured departed this life on April 28, 1913, from a cause covered by such certificate. The certificate in suit contains, among other things, the following provisions:

"Upon the failure of the above member to make any payment due from him to the Association all payments made shall be forfeited and his membership cease, except as hereafter provided. This certificate shall be incontestable after two years from its date, except for nonpayment of any premium due this association, and except for violation of the conditions of the certificate relating to naval and military service in time of war.

"Premium to be due and payable quarterly in advance, at the home office of the Association, or to an Agent of the Company, upon delivery of a re-

ceipt signed by the Secretary or President of said Association, the member to have thirty (30) days of grace after the first year for the payment of said premiums, provided that if the insured shall die within such period of grace, the unpaid premium for the current year may be deducted in any settlement under the policy.

"In case any note, check or draft given in payment or in part payment of money due the Association shall not be paid at maturity the certificate shall lapse in the same manner as it would had the payment not been attempted, provided, however, that if said check, note or draft be given for the payment of any premium due subsequent to the first year, thirty (30) days of grace shall be allowed as above provided.

"This policy and the application constitutes the entire contract between the parties. No agent of this Company has power to change this contract, waive forfeitures, extend credit or grant permits.

"If this policy shall lapse by non-payment of premium, the insured may however within sixty days thereafter be reinstated by paying any sum due from him, and furnishing the Company at its Home Office a satisfactory certificate of good health, or at any time within two years by furnishing the Company a satisfactory Medical Examination."

Endorsed on the back of such certificate is the following:

"Agents are not authorized to waive forfeitures, or to make, alter or discharge contracts. No agent has authority in any case to waive or postpone payment of premium."

The application made by the insured for such certificate, and which by its terms became a part thereof, contained the following:

"That if any of the conditions of the by-laws of the association are violated the applicant or his beneficiary surrenders all right of recovery under this certificate of membership."

That at the time of the execution of said certificate,

and continuously to the death of the insured, there was in full force and effect a certain by-law of appellant, with reference to the lapsing of such certificate on the nonpayment of a note, given in payment of money due it, of like tenor as the one contained in such certificate, as set out above.

Appellant contends that the failure of the insured to pay the said note of $9.82 given for the two quarterly premiums, either at its maturity, or within 1. the thirty days of grace allowed therefor, caused such certificate to lapse, and hence appellee cannot recover. This contention requires a determination of the effect of the acceptance of such note by appellant. The payment of a premium by note may be either absolute or conditional. If absolute, the insurer accepts the liability of the party executing the note in satisfaction of the premium, but if conditional, its nonpayment remits the insurer to its original right to demand payment of the premium. Vance, Ins. 209. Whether such payment is absolute or conditional depends on the intention of the parties at the time of the execution of such note. Such intention must be determined as any other fact, and may be expressed in the policy providing for such premium, or in the note itself. 25 Cyc 826; 3 Cooley, Briefs on Ins. 2269; 2 Bacon, Life and Acc. Ins. (4th ed.) §475; *Thompson* v. *Insurance Co.* (1881), 104 U. S. 252, 26 L. Ed. 765; *Forbes* v. *Union, etc., Ins. Co.* (1898), 151 Ind. 89, 51 N. E. 84; *Union, etc., Ins. Co.* v. *Adler* (1906), 38 Ind. App. 530, 73 N. E. 835, 75 N. E. 1088.

This rule does not seem to be controverted, but different contentions are made as to its application to the facts of this case. One contention is that the 2. acceptance of the note in question was a conditional payment of the premiums it represented, and the failure to pay the same was in effect a failure

to pay such premiums. The other contention is that the acceptance of such note was an absolute payment of such premiums, and therefore the nonpayment of such note in no way affected their payment. In considering whether the acceptance of such note was an absolute or conditional payment of such premiums, it will be observed that the note itself makes no provision for a forfeiture of the certificate by reason of its nonpayment. It was executed prior to the act of 1913 affecting negotiable instruments, and, as it is not payable in a bank in this state, it is nonnegotiable. Under the general rule prevailing in this state with reference to the acceptance of non-negotiable notes as payment, it is apparent that the acceptance of the note in question by appellant cannot be held to have constituted absolute payment of the quarterly premiums for which it was given in the absence of proof of an agreement to that effect. *Smith* v. *Bettger* (1879), 68 Ind. 254, 34 Am. Rep. 256; *Jeffries* v. *Lamb* (1880), 73 Ind. 202; *Travellers' Ins. Co.* v. *Chappelow* (1882), 83 Ind. 429; *Bradway* v. *Groenendyke* (1899), 153 Ind. 508, 55 N. E. 434; *Rhodes* v. *Webb-Jameson Co.* (1897), 19 Ind. App. 195, 49 N. E. 283; *Combs* v. *Bays* (1897), 19 Ind. App. 263, 49 N. E. 358.

It will be observed, however, that the certificate itself makes provision with reference to the effect of giving a note for a premium. This provision is set out in full, *supra*, and by reference it will be seen that it denominates payment of a premium by note as an *attempted* payment. Such designation clearly indicates that the parties to such certificate agreed at the time of its execution that any payment of a premium by note should not be an absolute payment, but an *attempted* payment, which should only become effective to discharge such premium when the note was paid. Such

provision therefore must be read in connection with every note given for a premium under such certificate, as it determines the character of such payment, in the absence of a subsequent agreement to the contrary. When this is done, it is at once manifest that such note was intended as a conditional payment only, as the provision not only characterizes such note as an *attempted* payment, but it also stipulates that its non-payment will cause the certificate to lapse in the same manner as a failure to pay a premium. It therefore follows that such note must be construed to be a conditional payment only, unless there was some evidence that it was accepted as absolute payment of the premiums for which it was given.

Counsel for appellee insist that the receipt given by appellant's secretary to the insured on February 4, 1913, at the time the note in question was executed, is evidence of such fact, but we do not so construe it. A comparison of this receipt with the remaining seven premium receipts introduced in evidence will disclose that this is the only one that states that a note was received for dues. All the others simply acknowledge the receipt of a specific sum of money for the dues for various quarters. The insertion of the word "note" in this particular receipt is significant, and clearly indicates that it only purported to acknowledge the receipt of a note for the dues for the quarter ending April 1, 1913. Such receipt of itself therefore cannot be said to be evidence of an absolute payment of the premium for the period indicated, since it merely acknowledges the receipt of a note, which the certificate designates in effect as a conditional payment only. On the other hand, there was testimony from the witness who represented appellant in the acceptance of the note to the effect that the insured said in substance at the time he executed the note, that he was not prepared to pay his

premium, and would like to have an extension of time for such purpose; that nothing was said with reference to the note being received in payment of the premiums, and that he took it as a matter of extension of time. As this was all the evidence bearing on this question, we conclude that no agreement was made whereby the note in controversy was to be accepted by appellant otherwise than as provided in the certificate in suit, and hence such note was not taken as an absolute payment of such premiums, but as a conditional payment only, and the failure to pay such note was in effect a failure to pay such premiums.

The case of *Union, etc., Ins. Co.* v. *Adler, supra,* fully supports the conclusion we have reached. In that case the provision for the lapsing of the policy was in the premium note itself. The court, in discussing the effect of such provision, said on page 539: "The note in question specifies that it is given on account of the policy, and unless paid when it becomes due such policy lapses as for nonpayment of premium when due. It is thus expressly agreed that the note was not accepted as payment. The payment of the note is made the test of the final payment of the premium. The failure to pay the note may not, in the absence of a provision in the policy for a forfeiture, work a forfeiture, yet it cannot be fairly held to have kept the policy alive as a payment. The decedent was bound by the entire note. Whatever right it gave him upon its execution was lost by its very terms by his failure to pay it at maturity. He could gain nothing by his own default." But it has been contended that such provision must be 4. contained in the note itself, and not in the policy alone, in order to effect such result, and for that reason the case cited and quoted is not applicable here. We do not concur in this contention. Reason does not seem to require such distinction, and the

authorities are to the contrary.   25 Cyc 826; 3 Cooley, Briefs on Ins. 2269; 2 Bacon, Life and Acc. Ins. (4th ed.) §475; *Imperial Life Ins. Co.* v. *Glass,* 96 Ala. 568, 11 South. 671; *Sullivan* v. *Connecticut, etc., Assn.* (1897), 101 Ga. 809, 29 S. E. 41; *McIntyre* v. *Mich. State Ins. Co.* (1883), 52 Mich. 188, 17 N. W. 781; *Behling* v. *Northwestern, etc., Ins. Co.* (1903), 117 Wis. 24, 93 N. W. 800; *Nat. Life Assn.* v. *Brown* (1897), 103 Ga. 382, 29 S. E. 927; *Leeper* v. *Franklin Life Ins. Co.* (1902), 93 Mo. App. 602; *Union, etc., Ins. Co.* v. *Hughes* (1902), (Tex.) 70 S. W. 1010; *Union, etc., Ins. Co.* v. *Duvall* (1894), 16 Ky. Law 398; *Muhleman* v. *Nat. Ins. Co.* (1873), 6 W. Va. 508; *Iowa Life Ins. Co.* v. *Lewis* (1902), 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204.   We therefore conclude that the insured was in default in payment of premiums at the time of his death.

Appellee contends, however, that the provision we have been discussing has no application to the certificate in suit, as it was more than two years old 5.   at the time of the insured's death.   It bases this contention on the provision of the certificate set out in full, *supra,* which provides that it shall be incontestable after two years from its date, except for nonpayment of premium and violation of conditions relating to naval and military service in time of wars.   It insists that the acceptance of the note in question was an absolute payment of the quarterly premiums for which it was given; that to permit the payment of such certificate to be contested after two years from its date, on the ground of the nonpayment of the note, would be to violate the incontestable provision of the certificate just stated, and therefore the only construction which will give force and effect to the provisions of both and avoid a conflict is to construe the provision for the lapsing of a certificate for the nonpayment of

a note, as applying to such certificates only as have run less than two years from their date, and the incontestable provision as applying to all other certificates. We do not concur in this contention. The construction we have placed on the acceptance of such note renders it unnecessary to limit the provision with reference to the lapsing of certificates for the nonpayment of a note given for a premium to the first two years of its life, as contended by appellee, in order to avoid a conflict with the incontestable clause. It treats the acceptance of such note, under the provision of the certificate and the by-law, simply as an extension of time for the payment of the premiums for which it was given, and a failure to pay such note as a failure to pay such premiums. In such event one of the excepted conditions provided in the incontestable clause arose and became available as a defense. *Union, etc., Ins. Co.* v. *Adler, supra; Union, etc., Ins. Co.* v. *Whetzel* (1902), 29 Ind. App. 658, 65 N. E. 15.

But there is in fact no real conflict between such incontestable clause, and the provision in the certificate and by-law with reference to the effect of the 6. nonpayment of a note given for a premium. Under the rule governing the construction of contracts we are required to construe the certificate as a whole. Such rule requires that every clause, and even every word of a contract should, when possible, have assigned to it some meaning, and a harmonious whole be made to appear, for plainly the parties so intended, since it will not be presumed that they wilfully inserted a mere idle provision. *Irwin* v. *Kilburn* (1885), 104 Ind. 113, 3 N. E. 650; *Warrum* v. *White* (1908), 171 Ind. 574, 86 N. E. 959; *Nave* v. *Powell* (1912), 52 Ind. App. 496, 96 N. E. 395; *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513.

When this is done the apparent conflict for which ap-

pellee contends disappears. It will be observed that what is called the incontestable clause provides

7. in substance that such certificate shall be incontestable after two years from its date, except for nonpayment of any premium,. and violation of conditions relating to naval and military service, while the alleged conflicting forfeiture clause provides, in substance, for the lapsing of a certificate where a note given in payment of premium is not paid at maturity. Construing these two provisions together, as we are required to do under the rule stated, and omitting any reference to naval and military affairs, their real meaning is expressed in a single sentence as follows: "This certificate shall be incontestable after two years from its date, except for nonpayment of any premium," but if a note be given in payment of a premium, and it is not paid at maturity, this "certificate shall lapse in the same manner as it would had the payment not been attempted." This gives full force and effect to both provisions of the certificate concurrently, without doing violence to either, and is a fair and reasonable construction of each. It therefore follows that, even if we had accepted appellee's contention that the note in question was executed as an absolute payment of such premium, the incontestable clause would not have afforded any relief from the effect of its nonpayment. But appellee insists that the by-law which provides that a certificate will lapse if a note given in payment of a premium is not paid at maturity is not enforceable.

8. It bases this contention on the fact that the provision in the application making a compliance with the by-laws of appellant binding on either the insured or his beneficiary stipulates in substance that the insured or his beneficiary surrenders all right of recovery under such certificate on the violation of any of the conditions of such by-laws. The claim is made that the

use of the word "or" in such provision renders it uncertain as to whether it was intended that the insured or his beneficiary shall suffer a forfeiture by reason of any such violation, and that, by reason of this fact, the provision under consideration is too indefinite to be enforced as the basis of a forfeiture not favored in law. Without entering into a discussion of the various meanings of the word "or" when used in different relations, as disclosed by the authorities, or conceding that a proper construction of the word as here used produces uncertainty, it will suffice to say that the same provision contained in the by-laws with reference to the nonpayment of a note given in payment of a premium is also contained in the certificate itself, and hence the result would be the same regardless of the contention of appellee as stated.

Appellee further contends that appellant cannot urge as a defense to this action that the certificate in suit lapsed because of the nonpayment of the note in question, for the reason that there is no allegation or proof that such note was tendered back to the insured, or tendered to his personal representative, or to the beneficiary or any one else; that the retention of such note was in effect an election to waive any such forfeiture, and to treat such certificate as valid. She bases this contention on the well-established rule that the breach of a condition in an insurance contract does not render such contract void, but voidable only, at the election of the insurer, and that, in order for an insurer to avoid such contract, it must show a seasonable return of the premium received thereunder. In the cases cited in support of this rule premiums had been received subsequently to the broken condition and prior to the insurer's discovery thereof, and it was a return of such premiums so received that it was held

necessary to return on an election to avoid such contracts of insurance. We do not question the application of the rule under such a state of facts, but in the instant case the facts are so far different as to render the rule stated and the authorities cited inapplicable. In this case nothing whatever was received under the certificate subsequently to the happening of the event that worked a forfeiture thereof, and hence there was nothing which the insurer was required to return in order that the forfeiture might be effective. In cases of this kind the authorities hold that, in the absence of a provision to the contrary, it is not necessary for an insurer to do any affirmative act in order to avoid liability under a certificate of insurance which provides that the right of the insured under it shall be forfeited on a failure to pay the premium therefor, or any note given for such premium. *Grand Lodge, etc.* v. *Marshall* (1903), 31 Ind. App. 534, 68 N. E. 605, 99 Am. St. 273; *Brooks* v. *Conservative Life Ins. Co.* (1906), 132 Iowa 377, 106 N. W. 913, 119 Am. St. 560, 11 Ann. Cas. 339, 340; 3 Cooley, Briefs on Ins. 2277; 25 Cyc 828; 2 Bacon, Life and Acc. Ins. (4th ed.) §476; Vance, Ins. 235; 19 Am. and Eng. Ency. Law 47; *Supreme Council, etc.* v. *Grove* (1911), 176 Ind. 356, 96 N. E. 159, 36 L. R. A. (N. S.) 913; *Iowa Life Ins. Co.* v. *Lewis, supra; In re Attorney-General* v. *Continental Life Ins. Co.* (1883), 93 N. Y. 70; *Roehner* v. *Knickerbocker Life Ins. Co.* (1875), 63 N. Y. 160; *Sovereign Camp, etc.* v. *Hicks* (1904), 37 Tex. Civ. App. 424, 84 S. W. 425.

However, it has been uniformly held that a provision in a certificate for forfeiture, on the nonpayment of a premium or a premium note, being for the benefit of the insurer, may be waived by it. *Willcuts* v. *Northwestern, etc., Ins. Co.* (1882), 81 Ind. 300; *Phenix Ins. Co.* v. *Tomlinson* (1890), 125 Ind. 84, 25 N. E. 126, 9 L. R. A. 317, 21 Am. St. 203; *Michi-*

*gan, etc., Ins. Co.* v. *Custer* (1891), 128 Ind. 25, 27
N. E. 124; *Supreme Tribe, etc.* v. *Hall* (1899), 24 Ind.
App. 316, 56 N. E. 780, 79 Am. St. 262; *Prudential
Ins. Co.* v. *Sullivan* (1901), 27 Ind. App. 30, 59 N. E.
873. We must therefore examine the record and
ascertain if there was any evidence from which
the jury might have found that such forfeiture
had been waived by appellant. It is claimed that the
mere retention of such note was evidence of such fact.
The authorities lead us to a different conclusion. They
hold that the mere retention of such a note does not
furnish ground for presuming or inferring a waiver of
the conditions upon which it was given and accepted,
as such act is not inconsistent with the assertion of for-
feiture; that such note may be held by the insured
merely as evidence of its nonpayment, and therefore
such act is in harmony with a claim of forfeiture, and
of itself furnishes no evidence of waiver. On the other
hand, it is held that, if the insurer retains such note as
an evidence of indebtedness still due it, such act will
constitute a waiver of the right to claim that the certif-
icate under which it was executed has been forfeited by
reason of its nonpayment, and an attempt to collect the
same after the right to a forfeiture has accrued is evi-
dence of such waiver. *New York Life Ins. Co.* v. *Evans*
(1910), 136 Ky. 391, 124 S. W. 376; *Parker* v. *Bankers'
Life Assn.* (1899), 86 Ill. App. 315; *Union, etc., Ins.
Co.* v. *Spinks* (1904), 119 Ky. 261, 83 S. W. 615, 84 S.
W. 1160, 69 L. R. A. 264, 7 Ann. Cas. 913; *How* v.
*Union, etc., Ins. Co.* (1880), 80 N. Y. 32; *New York
Life Ins. Co.* v. *Warren Deposit Bank* (1903), (Ky.)
75 S. W. 234; *Rhodes* v. *Royal Union, etc., Ins. Co.*
(1914), 56 Pa. Super. Ct. 233; *Sharpe* v. *New York Life
Ins. Co.* (1904), (Neb.) 98 N. W. 66; *Moreland* v.
*Union, etc., Ins. Co.* (1898), 20 Ky. Law 432, 46 S. W.
516; *Union, etc., Ins. Co.* v. *Duvall* (1898), 20 Ky. Law

441, 46 S. W. 518; *Manhattan Life Ins. Co.* v. *Savage's Admr.* (1901), (Ky.) 63 S. W. 278.

In this case there is no evidence whatever of any effort on the part of appellant to collect the note in question, or to assert it as an obligation against the insured or his estate, or any one else, after its maturity and the thirty days of grace allowed for its payment. It was silent and passive in that regard, which is wholly consistent with a rightful retention of such note under a claim that the certificate had lapsed by reason of its nonpayment. But beyond this there is undisputed evidence that appellee, subsequently to the death of the insured, offered to pay the note, but payment was refused by appellant. Under such circumstances no presumption of waiver would arise, and no such inference could be properly drawn from the mere retention of the note.

It has been urged that the conduct of appellant with reference to certain commissions on business procured by its agent King with the assistance of the insured afforded some evidence of a waiver of such forfeiture. The uncontradicted evidence on this subject, in substance, is as follows: Appellant had in its employ as a soliciting agent one King, who engaged the insured as an assistant in soliciting among his acquaintances. King was to receive as his commission sixty per cent. of the first premium on each certificate issued on an application procured by him, and he agreed to give the insured in payment of his services twenty-five per cent. of such commission on all business secured with his assistance. King requested the secretary of appellant to keep a memorandum of the business secured with the assistance of the insured and the amount of his commission to which the insured was entitled under such agreement. Thereafter King would report to the secretary of appellant from time to time such

business as was secured with his assistance, and such secretary, for the convenience of said King and the insured, opened a memorandum account on the books of the company in pursuance of the request of said King showing such business and the amount due the insured from King's commissions on account thereof. At times certificates were issued, on applications secured by King with the assistance of the insured, where notes were taken for the first premium out of which the commission was payable. In such cases no commission was due from appellant to King, and nothing was due from King to appellant on such business until such notes were paid, but the amounts due each in the event such notes were paid were entered at the time of issuing such certificates, and if such notes were not paid, such amounts were charged off without payment. On April 5, 1913, the date on which the days of grace for the payment of the note in question expired, there were no unpaid commissions due the insured, and none in which he had any contingent interest. This status so remained until April 17, 1913, when a certificate was issued to John T. Boswell on an application secured by King with the assistance of the insured. The first premium on such certificate was not paid in cash, but two notes were taken therefor, which were paid in July and December, 1913, respectively. The amount due the insured from King's commission contingent on the payment of said notes was $8.96. An entry of two items of $4.48 each was made on the memorandum account kept by the secretary of appellant at the request of said King on the date said certificate was issued as a memorandum of the amount that would be due the insured from the commission of said King on the payment of such notes. This account so remained until April 30, 1913, when the total of these items was transferred from said memorandum account to said King's account,

from which it was originally taken, and such memorandum account was thereby closed. The amounts entered in such account in favor of the insured were paid to him from time to time by the directions of said King. Such payments were made at times by issuing to the insured receipts for his quarterly premium on the certificate in suit, if any such premium was then due, and, if not, then such payments were made in cash.

It is urged that the foregoing facts afford some evidence from which the jury might have found that appellant waived the forfeiture provided by the terms of the certificate for the nonpayment of the note or the quarterly premiums covered thereby. An approved definition of waiver reads as follows: "Waiver is where one in possession of any right, whether conferred by law or by contract, and with full knowledge of material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it, thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards." *Shedd v. American Credit, etc., Co.* (1911), 48 Ind. App. 23, 95 N. E. 316; *Ohio, etc., Buggy Co.* v. *Anderson Forging Co.* (1907), 168 Ind. 593, 81 N. E. 574, 11 Ann. Cas. 1045. We have examined with care that part of the record by which such uncontradicted facts are established, and have not been able to find any evidence that tends to prove that appellant had done or had forborne the doing of anything inconsistent with its right of forfeiture.

It will be observed that there were no commissions, either immediate or contingent, due the insured at the time fixed for such certificate to lapse by reason of the nonpayment of the note in question. The whole transaction with reference to the Boswell certificate, on which the claim for commission is based, arose subse-

quently thereto. Such certificate was not issued until twelve days later. Notes were given for the first premium which were not paid until July and December afterwards, and hence the insured's commission on that account remained contingent until such time. True, appellant's secretary at the time such certificate was issued entered on the memorandum account which he kept at King's request the amount to which the insured would be entitled from King's commission on the payment of such notes, but this in no way bound appellant for the payment thereof unless and until such notes were paid. It has been held that the fact that there were wages due an insured from the insurer at the time of his default in the payment of an assessment sufficient to pay the same will not prevent a forfeiture for nonpayment, as the insurer is under no duty to apply such wages to the payment of the assessment, in the absence of an agreement so to do. 21 Am. and Eng. Ency. Law 291; *Willcutts* v. *Northwestern, etc., Ins. Co., supra; Caywood* v. *Supreme Lodge, etc.* (1908), 171 Ind. 410, 86 N. E. 482, 23 L. R. A. (N. S.) 304, 131 Am. St. 253, 17 Ann. Cas. 503; *Pister* v. *Benefit Assn.* (1896), 3 Pa. Super. Ct. 50; 3 Cooley, Briefs on Ins. 2325. In this case there was no evidence of any agreement that the insured's commissions should be applied in payment of his premiums or the note in question, and nothing from which such authority could be properly inferred. Hence the fact that appellant's secretary subsequent to the death of the insured transferred such amount from the memorandum account to King's account from which it originally came has no significance. If it had remained in such memorandum account, appellant would not have been required to apply it on said note in the absence of an agreement to that effect. The fact that such commissions had been previously applied by the insured in the payment of his premium will not author-

ize an inference that an agreement existed for future applications. But even if it were possible to draw such inference as to any commissions due within the period of grace allowed for the payment of premiums, certainly we could not go beyond this and infer the existence of an agreement that appellant should not allow such certificate to lapse, but should hold it in abeyance, awaiting the accumulation of commissions with which to pay such premiums. The conduct of both appellant and the insured during previous years in regard to the payment of such premiums, the lapsing of such certificate, and the reinstatement of the same forbids such an inference. We are therefore firm in our conviction that the evidence discloses nothing with reference to the commissions of the insured to indicate a waiver of the right of forfeiture by reason of the nonpayment of such note.

But it is contended that the conduct of appellant in allowing the insured to pay his premiums from accumulated commissions and accepting such premiums after their maturity had led him to believe that such course would be continued, and his certificate would not be lapsed on account of default in such payment; that the insured was thereby lulled into a sense of security in that regard, and for that reason appellant is now estopped from asserting a forfeiture on account of the nonpayment of the note in question. We recognize the rule that an insurance company will be estopped to insist upon a forfeiture if by any agreement either expressed or implied by the course of its conduct, it leads the insured honestly to believe that his premiums will be received after the appointed day. *Workingmen's, etc., Assn.* v. *Leverton* (1912), 178 Ind. 151, 98 N. E. 871; *Majestic Life, etc., Co.* v. *Tuttle* (1914), 58 Ind. App. 98, 107 N. E. 22. It is not claimed in the instant case that there was any expressed agreement to

that effect, but it remains to be seen if there was any such implied agreement. The certificate in suit ed on May 30, 1910. The quarterly premiums fell due on the first days of January, April, July, ber of each year. Twelve quarterly premiums thereon matured prior to the execution of the note in question. We assume that the first quarterly premium was paid in cash at the time the certificate was issued. If so, the history of the payment of these premiums is as follows: Three were paid in cash; one was paid partly in cash and partly in commission; six were paid entirely by commissions; and two were extended by the execution of notes and never paid. Seven were paid within the period of grace allowed, and of those not so paid, one was only a single day and another only five days beyond such period. The last quarterly premium paid by commissions was the one falling due on January 1, 1912. Thus it clearly appears that there was no uniform custom of paying such premiums in commissions, or beyond the period of grace. Of the five occasions on which such premiums were not paid within the period of grace, there is direct and undisputed evidence of a forfeiture of the certificate on two of such occasions. On these two occasions the insured was required to furnish a certificate of good health in strict compliance with the provision for reinstatement. One of such certificates is in evidence, and we note that the insured states therein over his own signature as follows:

"I, Grant Mason of Princeton, State of Indiana, having lapsed my membership in the Farmers and Merchants Mutual Life Association, Princeton, Indiana, and desiring to be reinstated therein, do declare, guarantee and warrant, etc."

Thus he was made keenly conscious of the fact that his certificate was being lapsed by appellant for the nonpayment of his premiums. The evidence also dis-

closes that the insured had not paid any of the premiums which accrued on his certificate during the last fifteen months of his life in commissions. Two of such premiums had been paid in cash, viz.: those falling due on the first days of April and July, 1912. The three premiums subsequently falling due were never paid. In fact, the last insurance written prior to the expiration of the thirty days of grace allowed for the payment of the note in question, from which the insured was entitled to a commission, as appears from the memorandum account kept by the secretary of appellant at King's request, was in July, 1911. Such commissions were evidently exhausted in paying the quarterly premium due on his certificate on January 1, 1912. Thereafter his premiums were either paid in cash or were never paid. It is therefore quite manifest that the insured was not relying on his commissions for the payment of his premiums. It is equally as manifest that he was not honestly relying on a belief that his certificate would not be lapsed if he defaulted in the payment of his premiums, in view of the fact that he was required to give the good health certificate necessary for reinstatement after he had defaulted in the payment of his two quarterly premiums, maturing immediately preceding the last default, to wit: on July 1 and October 1, 1912. Under these facts there is no ground for indulging an inference that appellant by its course of conduct had led the insured to forego prompt payment of his premiums on the belief that his certificate would not lapse thereby, and thus lulled him into a sense of security notwithstanding such defaults. Moreover, it has been repeatedly held that occasional

15. voluntary indulgence on the part of an insurance company, in the absence of an express or implied agreement to waive payment of assessments according to the conditions of the contract, cannot be justly con-

strued as a permanent waiver, or as depriving the company of the right to insist upon a forfeiture, or to cancel its policy on account of the failure to pay according to the stipulations therein written. *Sweetser* v. *Odd Fellows, etc., Assn.* (1889), 117 Ind. 97, 19 N. E. 722; *Supreme Lodge, etc.* v. *Hahn* (1908), 43 Ind. App. 75, 84 N. E. 837; *Thompson* v. *Insurance Co., supra; Easley* v. *Valley Mut. Life Assn.* (1895), 91 Va. 161, 21 S. E. 235; *Thompson* v. *Insurance Co.* (1906), 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, 115 Am. St. 823.

Our attention has been called to the rule of law that forfeitures are not looked upon with favor. We recognize the force and reason of such rule, but it has been repeatedly held that courts cannot avoid enforcing them when the party by whose fault they are incurred cannot show some good ground in the conduct of the other party on which to base a reasonable excuse for the default. *Grand Lodge, etc.* v. *Marshall, supra; Union, etc., Ins. Co.* v. *Adler, supra; Public Savings, etc., Co.* v. *Coombes* (1915), 59 Ind. App. 523, 108 N. E. 244; *Thompson* v. *Insurance Co., supra.* We are not at liberty, therefore, to arbitrarily ignore the plain provision of the certificate in suit with reference to its forfeiture for nonpayment of premiums due thereon, or of a note given therefor. No valid excuse has been given for the admitted default in such payment, and hence we must give effect to such provision. However, if it could be said that the facts stated, or any other facts which the evidence tended to prove, are sufficient to justify the jury in finding that appellant had waived the forfeiture in question, still the result of this appeal would not be changed in view of other errors hereinafter indicated.

Appellant urges other errors in its motion for a new trial, one of which is based on the action of the court

in admitting in evidence the post card sent to the insured on March 13, 1913, notifying him of the maturity of his quarterly premium on April 1, 1913. If the contents of the post card were admissible for any purpose, the action of the court was not error. One of the questions that the jury had to determine was whether the certificate in suit had lapsed prior to April 1, 1913, and had been reinstated by the acceptance of the note in question. In order to reinstate such certificate, if it had lapsed, the insured was required to furnish appellant a satisfactory certificate of good health. This requirement, however, could be waived. There is no evidence that any health certificate was furnished at the time of the acceptance of such note, or at any subsequent time. We are therefore of the opinion that the contents of such post card could properly be considered by the jury on the question of such waiver, and hence there was no error in its admission.

Another alleged error asserted by appellant in its motion for a new trial is based on the action of the court in admitting in evidence certain receipts executed by appellant showing the payment by the insured of a number of quarterly premiums prior to the execution of the note in question. We do not consider the admission of such receipts error. They tended to support the allegation of the complaint that the insured had performed all the conditions of the certificate on his part to be performed. The fact that such allegation might have been proven otherwise or by less evidence did not render their admission error.

Appellant also predicates error on the action of the court in giving instruction No. 12 at the request of appellee. This instruction informed the jury, in effect, that, if it found that the insured executed the note of February 4, 1913, as payment of all premiums then owing on the certificate in suit up to

April 1, 1913, and that appellant accepted such note as such payment, appellee was entitled to recover, and its verdict should be in her favor. This instruction was evidently drawn on the theory that the provision in the certificate and by-laws with reference to the effect of the nonpayment of a note given appellant in payment of money due it applied only during the first two years of the life of such certificate, by reason of the provision that it should be incontestable after two years from its date, except for nonpayment of premium and violation of conditions as to naval and military service in time of wars. This is a theory for which appellee contends, but in which we do not concur as indicated, *supra*. Under the construction we have hereinbefore given such provisions when considered together, such certificate lapsed in the absence of proof of a waiver, regardless of whether such note was accepted as absolute or conditional payment of the quarterly premiums it covered. This was true, because under such construction a certificate lapsed not only on failure to pay a premium, but also on failure to pay a note given for premium within the period of grace allowed therefor. It was therefore error to instruct the jury that it should return a verdict for appellee if they found that the note in question paid all premiums to April 1, 1913, as it wholly ignored the fact that such certificate might lapse if such note was not paid at its maturity, or within thirty days thereafter. Appellant also insists that the court erred in giving instruction No. 13 at the request of appellee. By this instruction the jury was told in effect that the acceptance of the note in question kept the certificate in suit in full force up to the quarter beginning April 1, 1913, and that, if the certificate was in full force and effect on said date, the insured had the right, so far as the payment of pre-

mium thereon was concerned, to keep it alive and secure against lapsing by paying another quarterly premium any time within the month of April, 1913. This was clearly error. It proceeds upon the theory that the giving of the note in question was an absolute payment of the premiums for the two quarters ending March 31, 1913, and therefore such quarterly premiums were fully discharged, regardless of whether such note was ever paid or not. In the earlier part of this opinion we have held that such theory could not be sustained under the evidence, and hence an instruction drawn on such theory is manifestly erroneous. Under our construction of the certificate and the effect of the acceptance of such note, there were two conditions on which such certificate could lapse after April 1, 1913. One was by a failure to pay the premium for the current quarter beginning on said date within such month, and the other was by a failure to pay the note given as conditional payment of the premiums for the two previous quarters within the period of grace expiring on the fifth day of such month, which was in effect a failure to pay such premiums. The instruction wholly ignored the possibility of the certificate lapsing on the happening of the last-named contingency, and hence the giving of it was error.

Appellant urges other alleged errors, but as such questions will probably not reoccur on another trial, in view of the matters determined by this appeal, we will not give them further consideration here. Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for such further proceedings as are not inconsistent with this opinion.

NOTE.—Reported in 116 N. E. 852. Insurance: (a) acceptance of note for premium, 1 Ann. Cas. 967, 25 Cyc 752; (b) forfeiture of policy for nonpayment of premium when insurer is indebted to insured, 17 Ann. Cas. 506; (c) construction of contract- for-

feiture, 25 Cyc 740; (d) nonpayment of premium note, forfeiture, waiver, 25 Cyc 858, 870; acceptance of overdue premiums by company, effect, 57 Am. Rep. 515.