TRADERS INSURANCE COMPANY *v.* CASSELL ET AL.

[No. 2,572.    Filed February 23, 1900.]

INSURANCE.—*Mortgages.*—*Record.*—*Notice.*—The public record of a chattel mortgage upon insured property is not notice thereof to the insurer.  *p. 241.*

Traders Ins. Co. v. Cassell.

INSURANCE —*Forfeiture.*—*Estoppel.*—Where the insurer, with knowledge of the facts constituting a forfeiture, continues to treat the contract as in force, and induces the insured to incur expenses and trouble while acting in that belief, the insurer is estopped to take advantage of the forfeiture. *p. 241.*

SAME.— *Mortgages.*— *Forfeiture.*— *Estoppel.* — An insurance policy provided that it should be void if the insured property should be incumbered by mortgage without the written consent of the company. The insured placed chattel mortgages on the insured property without the knowledge of the company or its agent. After the fire the agent was informed of the mortgages and told insured that he had no authority to adjust the loss, and that the company would send an agent to attend to that. The agent notified the company by letter of the loss, but said nothing about the mortgages, and the adjuster instructed the insured to obtain bills and invoices and put the goods not destroyed in as good order as possible and proceeded to adjust the loss, when he learned of the mortgages and then denied the company's liability. *Held,* that the company was not estopped from asserting a forfeiture of the policy. *pp. 239-246.*

From the Henry Circuit Court.  *Reversed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores, E. H. Bundy* and *J. M. Morris,* for appellant.

*M. E. Forkner, J. L. Griffiths* and *A. F. Potts,* for appellees.

ROBINSON, J.—The policy of fire insurance upon which this action is based provides, among other things, that "if the property be sold, transferred, or is or becomes encumbered by mortgage or trust deed, * * * or upon its passing into the hands of a receiver, or if this policy be assigned before a loss, then, and in every such case, this policy shall, without the written consent of this company thereto indorsed hereon, become absolutely void." It also provides that neither the agent who issued the policy, nor any other person, except the company's secretary, has authority to waive any terms of the policy, nor is the agent's assent to an increase of risk binding on the company until

indorsed on the policy, "nor, in the event that this policy shall become void by reason of the non-compliance with any of the terms or conditions hereof, shall the agent have power to waive, modify, or revive the same; and any policy so made void shall remain void and of no effect, any contract, by parol or otherwise, or understanding with the agent to the contrary notwithstanding."

The policy was issued by appellant's local agent January 30, 1896, for one year. The property burned December 29, 1896. The insured placed three chattel mortgages on the property, one dated November 23, 1896, and two dated December 4, 1896. Neither the local agent nor the company knew of the mortgages until after the fire. The resident or local agent testified that he learned of the mortgages after the fire; that he went to the scene of the fire in response to a request from the insured; that he told them he was sorry the complications had arisen, but that the placing of mortgages on the stock had voided the policy, and that they had no claim upon the company; that he had no authority to speak for the company, and had nothing to do with the adjustment of it; that he would report the loss to the company, and that they would send a person specially authorized to attend to that class of business, and that he would make a proper disposition of the matter. One of the firm insured testified that the local agent asked about the mortgages, and witness told him, and gave him the amount; that the agent then said he was sorry to find it in that condition; that the condition of the policy had been violated, but that he would write a complete statement of the matter to the company, and advise them to treat the insured fairly, as it was an honest loss; that the agent gave no directions as to what should be done with the stock, or anything of that kind. The other member of the firm testified that the agent said to him he was sorry to find the stock mortgaged, asked the witness if it was mortgaged, and witness said it

Traders Ins. Co. *v.* Cassell.

was; that the agent said he was going to do the best for them he could; that he would go home, and notify the company, and give them a full statement of it.

It further appears that the local agent notified the company of the loss by letter, but said nothing about the mortgages; that the company, acting upon this notice, sent its adjuster to the place of the fire, who at the time knew nothing of the mortgages; that he instructed the insured to write for bills and invoices, the same having been burned, to put the goods not destroyed in as good shape as possible; to advise him when they were ready, and he would return. The insured sent for the bills and invoices, put the goods in shape, and notified the adjuster. When he returned the second time, he did not yet know of the mortgages, and entered upon a consideration of the loss. Before proceeding far he learned of the mortgages, and then denied the company's liability.

Several questions are presented, but the question upon which the appeal practically rests is whether, upon the facts, the company is estopped from claiming a forfeiture of the policy because of the execution of the chattel mortgages.

The public record of a chattel mortgage upon insured property is not notice thereof to the insurer. *Phenix Ins. Co.* v. *Overman*, 21 Ind. App. 516; *Shaffer* v. *Milwaukee Ins. Co.*, 17 Ind. App. 204.

If the insurer, with knowledge of the facts constituting a forfeiture, continues to treat the contract as in force, and induces the insured to incur expenses and trouble while acting in that belief, the insurer is estopped to take advantage of the forfeiture.

An insurance policy is a contract, and the insured accepts it with knowledge of all its conditions and stipulations. In the absence of any fraud or mistake, the insured is conclusively presumed to know its contents. The condition

against chattel mortgages is valid, and one which the company could rightfully insert in its policy, and insist upon as a defense. The rules against a forfeiture are very liberal, but they are not so liberal as to authorize a court to make a contract for the parties, or to disregard one the parties have made for themselves. In the case at bar the execution of the chattel mortgages, without the company's knowledge or consent, voided the policy, and, unless the stipulation against mortgages was waived, there can be no recovery. See *Havens* v. *Home Ins. Co.*, 111 Ind. 90; *Phenix Ins. Co.* v. *Lamar*, 106 Ind. 513, 55 Am. Rep. 764; *Milwaukee Ins. Co.* v. *Niewedde*, 12 Ind. App. 145; *Bowlus* v. *Phenix Ins. Co.*, 133 Ind. 106, 20 L. R. A. 400; *Geiss* v. *Franklin Ins. Co.*, 123 Ind. 172; *Continental Ins. Co.* v. *Kyle*, 124 Ind. 132, 9 L. R. A. 81; *Continental Ins. Co* v. *Vanlue*, 126 Ind. 410, 10 L. R. A. 843; *Hawkins* v. *Rockford Ins. Co.*, 70 Wis. 1; *Bank* v. *American Ins. Co.*, 58 Minn. 492, 60 N. W. 345.

If the company's local agent, at the time the policy was issued, or at any time before the loss, knows of the violation of conditions of the policy, the knowledge of the agent is the knowledge of the company, and after the loss the company can not defend because of such breach of the contract. To this effect are the following cases cited by counsel for appellee: *Forward* v. *Continental Ins. Co.*, 142 N. Y. 382, 37 N. E. 615, 25 L. R. A. 637; *Phenix Ins. Co.* v. *Hart*, 149 Ill. 513, 36 N. E. 990; *Williamsburg, etc., Ins. Co.* v. *Cary*, 83 Ill. 453; *Carpenter* v. *German-American Ins. Co.*, 135 N. Y. 298, 31 N. E. 1015; *Bennett* v. *Council Bluffs Ins. Co.*, 70 Iowa 600, 31 N. W. 948; *Insurance Co.* v. *Stanton*, 56 Ill. 345; *Moffitt* v. *Phenix Ins. Co.*, 11 Ind. App. 233. But the principle declared in these cases is not applicable to the facts in the case at bar.

An examination of the other cases cited by appellees' counsel also shows a materially different state of facts from those in the case at bar. In *Brown* v. *State Ins. Co.*, 74

Iowa 428, 38 N. W. 135, the company placed the claim for loss in an adjuster's hands, who, knowing the insured had not kept his books and inventories as required by the policy, required him to procure copies of bills and invoices of his purchases; held, to amount to a waiver of the forfeiture. In *Pennsylvania Ins. Co. v. Kittle*, 39 Mich. 51, an adjusting agent, with knowledge of additional insurance, waived, for the company, a forfeiture of the policy by putting the insured to the expense of making proofs of loss without giving him to understand that the company would rely on the forfeiture. In *Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410, the company, after the loss, and after it had notice, through an agent sent to investigate the loss, of foreclosure proceedings which forfeited the policy, required the insured to appear and be examined. Held, a waiver of the forfeiture. In *Cannon* v. *Home Ins. Co.*, 53 Wis. 585, 11 N. W. 11, the company, after knowledge, through its adjuster, of breach of a condition in the policy, by requiring proofs of loss waived the forfeiture of the policy. In *Oshkosh, etc., Co.* v. *Germania Ins. Co.*, 71 Wis. 454, 37 N. W. 819, an adjuster, with knowledge of facts working a forfeiture, continued to recognize the validity of the policy, and entered into negotiations for a settlement, whereby the insured was put to expense and trouble. In *Eagle Fire Ins. Co.* v. *Globe, etc., Co.*, 44 Neb. 380, 62 N. W. 895, the company, after the loss, with knowledge of additional insurance, submitted the amount of the loss to arbitration. The opinion sets out the evidence as to the knowledge the company had of additional insurance prior to the loss, which shows the local agent only had knowledge; but it is not clear whether the company afterward had actual knowledge, although it is stated that the company submitted the loss to arbitration, having knowledge of the additional insurance, and that the company canceled the policy and refunded the unearned premium.

In *Phenix, etc., Ins. Co.* v. *Hinesley*, 75 Ind. 1, it was

held that knowledge by the resident agents of a foreign insurance company of delay in the payment of premiums was knowledge by the company.

A corporation is not charged with information casually obtained by its agent. *Shaffer* v. *Milwaukee Ins. Co.*, 17 Ind. App. 204; *Union Nat. Bank* v. *German Ins. Co.*, 71 Fed. 473, 18 C. C. A. 203. But if in such case the corporation act through such agent in a matter where the information possessed by him is pertinent, the agent's information becomes the principal's. *Willard* v. *Denise*, 50 N. J. Eq. 482, 26 Atl. 29.

Knowledge of an agent concerning a matter about which the insured knows he is not authorized to act, and in respect of which he does not act in behalf of the company, is not ground of estoppel. See 1 May on Ins. (3rd ed.), §153; *Mitchell* v. *Lycoming Ins. Co.*, 51 Pa. St. 402.

The local agent who wrote the policy had authority to receive applications, write and cancel policies, and collect premiums, but there is nothing to show he had any authority in the premises after a loss. Whatever may have been his powers with reference to issuing policies and the like, no inference arises therefrom that he had authority to adjust and settle losses. 2 Wood on Ins. (2nd ed.), §429; *Bush* v. *Westchester Ins. Co.*, 63 N. Y. 531; *Lohnes* v. *Insurance Co.*, 121 Mass. 439; *Smith* v. *Niagara Ins. Co.*, 60 Vt. 682, 15 Atl. 353, 1 L. R. A. 216.

But we do not think it necessary to inquire into the extent of such agent's authority generally, nor by virtue of the certificate of authority issued under the statute by the Auditor of State (§4915 Burns 1894, §3765 Horner 1897), because the insured were notified immediately after the fire and as soon as the agent learned of the mortgages, that he had no authority to speak for the company upon the effect of the mortgages, and nothing to do with the adjustment of the loss. 2 Wood on Fire Ins. §§411, 420; *Security Ins. Co.* v. *Fay*, 22 Mich. 467.

In *North British, etc., Ins. Co.* v. *Crutchfield,* 108 Ind. 518, it appeared that after the loss the local agent and the adjuster were acting together concerning the loss. The insured had two conversations with the adjuster in the local agent's presence and in the latter's office. Two days after the adjuster left, the insured tendered plans and specifications and proof of loss to the local agent, who refused to receive them. "Elsewhere," said the court, "it appeared that Rosencrans was probably acting under the instructions of Smith, the adjuster, in refusing to receive the proof of loss, when tendered by the assured. According to the evidence, Smith was apparently determined to baffle the assured, and keep him out of the money due on his policy." In reaching the conclusion, in that case, that it could be reasonably inferred that the assured had substantially complied with the conditions of the policy, the court said: "*A fortiori* should it be said, we think, that the tender by the assured of his proofs of loss to the agent of a foreign insurance company, who countersigned and issued to the assured his policy, and who, so far as appears, was the only officer or agent of such company in the State, and the unexplained refusal of such agent to accept such proofs of loss without objection thereto, was a sufficient compliance by the assured with the condition of his policy."

In the case at bar the local agent told the insured he had no authority to adjust the loss, and that the company would send an agent to attend to that. There was no "unexplained refusal" of the local agent to act in the case at bar. The insured had no right to rely upon any apparent authority of the agent because the agent said at the time he had no authority. There is nothing in the record to show that the company at any time through its proper agents, having knowledge of the facts, did anything to mislead the insured. They were not induced to act upon any false representations. No act was done with knowledge of the forfeiture, which necessarily operated as a recognition of the validity

of the policy. When the agent promised to write the company, he did it at the insured's request, and when the insured had been told that the agent had no authority to speak for the company as to the effect of the mortgages and nothing to do with the adjustment of the loss. The agent having authority to adjust the loss came as the insured were informed he would come. He entered upon an adjustment of the loss without any knowledge of the mortgages or that the local agent knew of them. The insured knew the mortgages voided the policy, the local agent told them so, and the policy said so. They knew the adjuster had power to adjust the loss, that the local agent had not, but they avoided mentioning the mortgages to the adjuster. Knowing, so far as they had communicated the facts to any agent of the company, that their policies were invalidated, they incurred expense and trouble without disclosing the facts to the agent who they knew had authority to settle the loss. Under such conditions, we can not say that the company is estopped from claiming a forfeiture of the policy. It is not claimed that the adjuster did or omitted to do anything after he received the information of the mortgages which operates to estop the company from asserting the forfeiture as a defense. See *Hosford* v. *Johnson*, 74 Ind. 479.

The verdict is not sustained by sufficient evidence, and the motion for a new trial should have been sustained. Judgment reversed.