**GULF INSURANCE COMPANY,**
**Plaintiff,**

**v.**

**Ronald TILLEY, Carol Jo Tilley, Marcella Smith (a minor), and Patricia A. Smith, Defendants.**

**Civ. No. 1688.**

United States District Court
N. D. Indiana,
Fort Wayne Division.
June 13, 1967.

Hugh Watson, Indianapolis, Ind., Milford M. Miller, Jr., Fort Wayne, Ind., for plaintiff.

William S. Glickfield, Marion, Ind., Donald Tunnell and Carl G. Winter, Indianapolis, Ind., for defendants.

## MEMORANDUM OF DECISION

ESCHBACH, District Judge.

This is an action for declaratory relief, pursuant to 28 U.S.C. § 2201, brought by the Gulf Insurance Company, a corporation, incorporated and having its principal place of business outside of the State of Indiana, against Ronald Tilley, Carol Jo Tilley, Marcella Smith (a minor), and Patricia A. Smith, each of whom is a citizen of the State of Indiana.

This court has jurisdiction of this cause by virtue of diversity of citizenship, 28 U.S.C. § 1332, the requisite diversity and amount in controversy having been found to exist.

In substance, plaintiff seeks a declaration by this court that a certain insurance policy, No. H 8321619, commonly known as a Homeowner's Policy, issued by plaintiff to Ronald Tilley and Carol Jo Tilley on August 16, 1963, and in full force and effect on October 9, 1964, does not cover said Ronald Tilley and Carol Jo Tilley with respect to their potential liability growing out of a lawsuit filed against them on December 16, 1965 in Grant Circuit Court, Marion, Grant

County, Indiana, by Marcella Smith, a minor, by her next friend Patricia Smith Wood.[1]

The Smith-Tilley lawsuit in state court grows out of an occurrence on October 9, 1964 at the Tilley residence at 2039 Fairfield Drive, Marion, Indiana. Marcella Smith, an infant of approximately two and a half years of age had been brought by her mother, Patricia Smith (Wood), to the Tilley home to be left there for the day under the care of Mrs. Tilley, who was to baby-sit with the child while Marcella's mother was at work. Marcella Smith was brought to the Tilley home at about 7:30 or 8 o'clock a.m. At about 9 o'clock a.m. Mrs. Tilley, taking her own two children and Marcella Smith with her, drove over to the home of her friend, one Juanita Elizabeth Stevens, and returned to the Tilley home with the children and with Mrs. Stevens and her three-year-old daughter.

At approximately 10 o'clock or 10:30 o'clock a.m., Mrs. Tilley decided to prepare some breakfast for herself and for Mrs. Stevens and, as a part thereof, prepared a pot of coffee, using an electric coffee percolator. The percolator, plugged into a wall outlet and full of hot coffee, was placed on a counter top, approximately four feet in height, between the eating area and the kitchen. The children, including Marcella Smith, were sitting at a small children's table on the kitchen side of the counter. It is not altogether clear just what transpired next, although the court need not for present purposes be concerned with these particulars, but apparently the Smith child was able to reach or grab hold of the percolator cord, and the percolator fell over, spilling its contents of hot coffee onto and about the body of Marcella Smith, allegedly severely burning her.

The Grant Circuit Court lawsuit was subsequently filed. After Mrs. Tilley filed a proof of claim with her insurance agent, The G. & O. Incorporated Insur-ance Agency, however, plaintiff denied liability under the Tilley homeowner's insurance policy.

In denying liability under the policy, plaintiff relies upon a paragraph of Special Exclusions, which paragraph, in parts (a) (1) and (a) (2), purports to exclude coverage with respect to:

"(1) * * * any business pursuits of an insured, except * * * activities therein which are ordinarily incident to non-business pursuits, [and] (2) * * * the rendering of any professional service or the omission thereof, * * * "

It is plaintiff's contention that the accident arose out of a "business pursuit" of the insured, or that it arose out of the rendering of a "personal" [sic] service by the insured, and that the accident thus falls within the scope of the quoted exclusion.

At the time of the accident involved in the Smith-Tilley lawsuit, Mrs. Tilley was baby-sitting for Marcella Smith and was to receive compensation therefor at the rate of two dollars ($2) per day, or ten dollars ($10) for a five-day week.[2] Mrs. Tilley had baby-sat on prior occasions, although infrequently and not on a regular or large-scale basis, and then only with one or two children at a time at most. In the fall of 1964 and for the rest of the school year, Mrs. Tilley cared for one Jerry Wimmer weekdays from 8 o'clock a.m. to 5:30 p.m. and Saturdays from 9 o'clock a.m. to 4 o'clock p.m., receiving for her services the sum of ten dollars ($10) per week. In the summer of 1963 or 1964, Mrs. Tilley took care of a little boy whose unwed mother, Arlene Fowerbaugh, brought him to Mrs. Tilley intending for her to adopt him, but agreeing to pay Mrs. Tilley fifteen dollars ($15) per week to leave him there for the time being, day and night. Miss Fowerbaugh paid for only two weeks although the child remained with Mrs. Tilley for approximately three or four months. In

---

1. The court assumes that Patricia Smith Wood and Patricia A. Smith, the named defendant herein, are one and the same individual.

2. In fact, Mrs. Tilley was never paid for her services, which had just commenced on the 5th of October, the Monday before the accident.

addition to the foregoing two instances of baby-sitting for compensation, Mrs. Tilley took care of two (Hickman) children for several months, receiving fifteen dollars ($15) a week for the two of them, and cared for another child for one day. Other than having once cared for four of her brother's children for about a year without receiving any compensation therefor, this was the entire extent of the insured's baby-sitting activities. Mrs. Tilley had once done some baby-sitting when she was fifteen years old, but had not done any baby-sitting for compensation again until some eight years later, in 1963, when she decided that she wanted to earn a little extra spending money for the children. On September 30, 1964 and October 1, 1964, Mrs. Tilley ran an advertisement in a Marion newspaper, reading:

"WANTED—Babysitting, my home, days, small children under 4. Ph. NO 2–7156."

The facts of this case are not substantially in dispute. The disagreement arises only with respect to the legal effect of the policy exclusion as applied to the facts in the instant cause.

■■ The court rejects the contention, with respect to the policy exclusion contained in Special Exclusion paragraph (a) (2), that Mrs. Tilley's baby-sitting constituted a "professional service" within the meaning of that policy term. See *Norways Sanatorium, Inc. v. Hartford Accident & Indemnity Co.,* 112 Ind.App. 241, 41 N.E.2d 823, 44 N.E.2d 192 (1942). The term "professional service" is not modified or defined in the body of the policy, and, giving to the term its usual and ordinary meaning, cf. *Hoosier Mut. Automobile Insurance Co. v. Lanam,* 79 Ind.App. 629, 137 N.E. 626 (1923), this court holds that baby-sitting, under the circumstances of this case, is not a "professional service" within the meaning of said policy. Mere employment, even though on a compensated basis, does not of itself render the person employed a "professional" in that particular field. See, e. g., *Cummins v. Pennsylvania Fire*

*Ins. Co.,* 153 Iowa 579, 134 N.W. 79 (1912). The term "professional" would seem, rather, to imply the use or application of specialized skills or learning, and the record before this court is devoid of anything that would indicate that baby-sitting alone requires, or that Mrs. Tilley possessed, any special training or skill for that purpose.

Turning next to the "business pursuits" exclusion of paragraph (a) (1), the court may assume, without deciding, that baby-sitting for compensation, on a scale and frequency as that undertaken by plaintiff's insured, does constitute a "business pursuit" within the meaning of the policy exclusion. However, see e. g., *Home Insurance Company v. Aurigemma,* 45 Misc.2d 875, 257 N.Y.S.2d 980, 985 (1965) (requiring, under New York law, that there be "continuity" as well as a "profit motive" before an insured will be regarded as having engaged in a business pursuit"), and cf. *Fadden v. Cambridge Mutual Fire Insurance Company,* 51 Misc.2d 858, 274 N.Y.S.2d 235, 241 (1966) (same—and defining "continuity" to mean "customary engagement"). But from such assumption it does not necessarily follow that the accident which took place at the time Mrs. Tilley was so engaged is excluded, *ipso facto,* from coverage under the insurance policy.

■ A liability insurer has a right, of course, the same as any individual, to contractually tailor the limits of its voluntarily undertaken liability; provided, however, that any such limitation does not contravene any statutory inhibition or public policy. See *Hill v. Standard Mutual Casualty Co.,* 110 F.2d 1001, at 1004 (C.C.A. 7, 1940); 7 Appleman, Insurance § 4255 (1962). In accordance with the nature of the specific risks against which the insurer undertakes to insure, a premium is calculated, which premium becomes the cost to the insured of the insurance protection so agreed to be offered. If a type of claim is presented to the insurer such as is clearly not within the scope of the policy's coverage, the insurer will not be liable thereunder, such type of coverage simply

not having been purchased by the insured. United States Sanitary Specialties Corp. v. Globe Indemnity Co., 204 F.2d 774 (7th Cir. 1953). However, a typical liability insurance contract is usually a lengthy and rather complex document, almost always drawn on the insurer's standard form, and all to frequently for the insured, who is presumed to know the terms of his insurance contract, cf. Traders' Ins. Co. v. Cassell, 24 Ind.App. 238, 56 N.E. 259 (1900), the third or fourth page of the policy takes away what the first page purports to give. This is not in any way to indicate impropriety, much less unlawfulness. To be sure, a lawful provision in an insurance contract will be given its full legal effect, notwithstanding that such effect might be to limit or eliminate coverage, see Bell v. New York Life Insurance Company, 134 Ind.App. 614, 190 N.E.2d 432 (1963). However, a contract term or clause which is ambiguous or is reasonably susceptible of more than one interpretation is subject to the well-settled rule of construction of insurance contracts that the disputed provision will be construed strictly against the insurer which drafted the instrument. See Glens Falls Ins. Co. v. Michael, 167 Ind. 659, 74 N.E. 964 (1905), and Evansville Ice & Storage Co. v. Fidelity & Casualty Co. of New York, 61 Ind.App. 194, 111 N.E. 812 (1916). And see Richmond Ins. Co. of New York v. Boetticher, 105 Ind.App. 558, 12 N.E.2d 1005 (1938), and State Security Life Insurance Company v. Kintner, 243 Ind. 331, 185 N.E.2d 527 (1962). This is all the more so where the particular provision in dispute purports to create an exclusion from coverage under the general terms of the policy. See Matsuo Yoshida v. Liberty Mutual Insurance Company, 240 F.2d 824 (9th Cir. 1957).

■ A condition or exclusion in an insurance contract, therefore, in order to be effective must clearly and unmistakably bring within its scope the particular act or omission that will bring the condition or exclusion into play, Masonic Acc. Ins. Co. v. Jackson, 200 Ind. 472, 164 N.E. 628, 61 A.L.R. 840 (1929), and coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists. German Fire Ins. Co. v. Stewart, 13 Ind.App. 627, 42 N.E. 286 (1895).

■ The Special Exclusions paragraph involved in the case at bar consists of two portions: A blanket exclusion of coverage with respect to insured's "business pursuits" and an exception to said blanket exclusion. The modifying language of the exception clearly cuts down on the breadth of the exclusion which immediately precedes it. In order to give meaning to the entire paragraph of exclusion, both parts thereof must be construed together, Farmers' & Merchants' Mutual Life Ass'n v. Mason, 65 Ind.App. 66, 116 N.E. 852 (1917), giving some meaning to each part, on the assumption that there was no intention to insert an idle provision into the body of the insurance contract. Farmers' & Merchants' Mutual Life Ass'n v. Mason, supra; Aetna Life Ins. Co. of Hartford, Conn. v. Doerr, 74 Ind.App. 35, 115 N.E. 700 (1917). The entire paragraph, therefore, giving to its components their common and ordinary meaning, Hoosier Mut. Automobile Insurance Co. v. Lanam, 79 Ind.App. 629, 137 N.E. 626 (1923), may fairly be read as saying that, as a general proposition, there will be no liability coverage with respect to an insured's "business pursuits," but that, as an exception to this broad rule, coverage will be extended to liability which arises, even though connected in some causal manner with the insured's "business pursuits," out of an act or omission that is ordinarily not associated with or related to the insured's business pursuits. In other words, to give any meaning at all to the excepting clause, the policy must be read to extend coverage to certain acts or omissions which are not, by their very nature, tainted by being associated with an insured's business pursuits, but which, nevertheless, with respect to the insured's potential liability arising there-

from, may have been causally related to such business pursuits.

It must be borne in mind that the particular activity which allegedly proximately caused Marcella Smith's alleged injuries was that of preparing hot coffee. The coffee was being prepared for Mrs. Tilley's personal use and for the use of her friend, Mrs. Stevens. In any event, it is manifest that the preparation of hot coffee is an activity that is not ordinarily associated with a baby-sitter's functions and, when viewed against the background of the excepting clause in the paragraph of Special Exclusions involved in this litigation, clearly appears as an activity which was "incident to non-business pursuits" (if in fact Mrs. Tilley's baby-sitting constituted a "business pursuit" in the first place). This construction of the meaning of the excepting clause is altogether reasonable; moreover, it is essential if the excepting clause is to be rendered effective, see American Mut. Liability Ins. Co. of Boston v. Duesenberg, 214 Ind. 488, 14 N.E. 2d 919 (1938), reh. 16 N.E.2d 698, 117 A.L.R. 1293 (1938), 11 Couch, Insurance 2d § 44:5 (1963), or, for that matter, is to be given any meaning at all. See Aetna Life Ins. Co. of Hartford, Conn. v. Doerr, 74 Ind.App. 35, 115 N.E. 700 (1917). Indeed, under the present circumstances, such construction is made without sacrificing any clearly expressed limitation on plaintiff's liability. See Glens Falls Ins. Co. v. Michael, 167 Ind. 659, 74 N.E. 964, 79 N.E. 905 (1905). At best, the Special Exclusions paragraph here involved clearly leaves the act involved in the Grant Circuit Court litigation outside of the reach of the policy exclusion; but, at the least, the exclusion paragraph, taken as a whole, is ambiguous and is reasonably susceptible of the construction here given. German Fire Ins. Co. v. Stewart, 13 Ind.App. 627, 42 N.E. 286 (1895); Masonic Acc. Ins. Co. v. Jackson, 200 Ind. 472, 164 N.E. 628, 61 A.L.R. 840 (1929).

This court has not overlooked the fact that "but for" Marcella Smith's presence on the Tilley premises on October 9, 1964, she would not have been exposed to the hot coffee. However, the Special Exclusions paragraph at bar cannot reasonably be read to contemplate such a strict causal test, a test that would totally emasculate the excepting clause of said paragraph and render it totally without meaning.

No Indiana case involving a construction of the term "business pursuits," as used in the insurance policy at bar, has been cited to this court, and none has been found by independent research.

This court holds that the alleged negligent acts or omissions of October 9, 1964, for which legal liability is being asserted against plaintiff's insureds, Ronald Tilley and Carol Jo Tilley, do not fall within the scope of Special Exclusions paragraph (a) and are not, therefore, excluded by said paragraph from coverage under the Tilley homeowner's insurance policy involved in this litigation.

This cause was tried to the court, without the intervention of a jury. This memorandum of decision contains the court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

## JUDGMENT

Now, therefore, it is hereby ordered, adjudged, and decreed that plaintiff, Gulf Insurance Company, is not entitled to the declaratory relief prayed for in its complaint against the defendants, Ronald Tilley, Carol Jo Tilley, Marcella Smith (a minor), and Patricia A. Smith, and judgment is hereby entered for said defendants and against said plaintiff.