**INDIANA GAS COMPANY, INC., et al., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants.**

**Civil No. 1:95cv101.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for plaintiffs Indiana Gas Co., Richmond Gas Corp., Terre Haute Gas Corp.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty and Surety Company, Detroit, MI, for defendant Aetna Casualty & Surety Company.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for defendant Home Ins. Co.

James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for defendant Certain Underwriters at Lloyd's London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for Certain London Market Ins. Companies.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell Ltd., Chicago, IL, for defendant Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for defendants St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a "Motion for Partial Summary Judgment on the

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E.

Pollution Exclusion" filed by the Home Insurance Company ("Home") on July 10, 1996 [1]. Also before the court is "London Market Insurers' Motion for Summary Judgment on all Policies Containing the London Market Pollution Exclusion", which was also filed on July 10, 1996. The parties completed briefing the motions on August 9, 1996.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992)

(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genu-

---

1. Other defendants have joined Home's motion for summary judgment.

ine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The plaintiffs, Indiana Gas Company, Inc., Richmond Gas Corporation and Terre Haute Gas Corporation (collectively "Indiana Gas"), commenced this action by filing a complaint for declaratory judgment and breach of contract because of the refusal of the five remaining defendant insurance companies to pay claims for third-party property damage tendered to them by Indiana Gas under comprehensive general liability insurance policies. According to Indiana Gas, the underlying property damage arises out of the historical gas manufacturing operations that took place at certain properties now owned by Indiana Gas.

From the early 1800's until natural gas became widely available in the 1940's and 1950's, gas for heating, lighting and cooking was manufactured by superheating coal and, later, coal combined with oil. During the manufactured gas era, more than 1,500 cities and towns across the country had a town gas plant that manufactured and stored gas until it was distributed directly to the homes and businesses of the town through a pressurized underground gas pipeline distribution system. The gas manufacturing process created tar, as well as other residuals and wastes, as a by-product. Unfortunately, the residuals, wastes and by-products from the gas manufacturing process contained hazardous constituents, such as benzene, which have been discovered in the subsurface soil and groundwater at properties where these manufactured gas plants ("MGPs") were operated. Nine such former MGP sites: Shelbyville, Lafayette, Bedford, Greencastle, Huntington, Marion, Richmond, Seymour, and Terre Haute, Indiana, are at issue in the claims for property damage which underlie this lawsuit for insurance coverage.

Indiana Gas claims that it has incurred and will continue to incur millions of dollars in liabilities as the result of state and federal law requirements to respond to the property damage at and near certain former MGP sites. According to Indiana Gas, damage to groundwater beneath the former MGP sites from subsurface leaching and migration began at most locations prior to 1955 and continues to the present day.

### HOME'S MOTION FOR SUMMARY JUDGMENT ON THE POLLUTION EXCLUSION

In support of its motion for summary judgment, Home argues that Indiana Gas is not entitled to coverage under any insurance policy that excludes coverage for pollution absent a "sudden and accidental" discharge, dispersal, escape or release of pollutants. Specifically, the language of the pollution exclusion at issue in this motion reads as follows:

[T]his policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or

pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Coverage under the policies at issue depends in the first instance on whether the underlying claims are for a discharge or release of pollutants and therefore subject to the pollution exclusion. If the exclusion applies, then coverage depends entirely on whether the "sudden and accidental" exception to the exclusion also applies.

Home first argues that Indiana Gas' claims are based on a release of pollutants, and thus fit within the exclusion. Indiana Gas, however, claims that the term "pollutant" is ambiguous. Indiana Gas further claims that Home bears the burden of establishing that MGP by-products were understood by the parties to be "pollutants" within the meaning of the exclusion at the time the policies containing such exclusions were issued.

Indiana Gas relies on *American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind.1996), in support of its position that the term "pollutant" is ambiguous and should thus be construed against the insurer. In *Kiger*, the insured owned a gasoline service station, which was the source of an underground gasoline leak. The insurance policy at issue contained a pollution exclusion clause and defined "pollutants" as:

> any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.* at 948. The *Kiger* court stated that:

> Clearly, this clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a "chemical" there would be no insurance coverage. Accordingly, this clause requires interpretation.... We are particularly troubled by the interpretation offered by American States, as it makes it appear that Kiger was sold a policy that provided no coverage for a large segment of the gas station's business operations....

In any event, since the term "pollutant" does not obviously include gasoline and, accordingly is ambiguous, we once again must construe the language against the insurer who drafted it. Appellant claims that in common parlance gasoline is sometimes referred to as a pollutant. That may be correct, but the ambiguity remains. If a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language of the contract must be explicit.

*Id.* at 948–49.

Indiana Gas argues that like *Kiger*, the instant case involves releases of substances that are not explicitly listed in the pollution exclusion and that obviously were not considered by Indiana Gas to be "pollutants" until recently when contamination was discovered at the sites. Although the exact harmful chemical substances that were released into the environment are not listed in the pollution exclusion clause, the clause does clearly state that damages arising out of the discharge, etc. of "waste materials" are not covered by the policy. It is clear to this court that the substances which Indiana Gas and its predecessors placed into the environment were "waste products".

Although Indiana Gas attempts to characterize the waste products as "by-products", some of which were marketable in some form, it is clear that even if some of the waste products were eventually marketable, a huge amount of waste products were simply dumped on the ground or buried in pits. Indiana Gas' own experts have testified that such methods of disposing wastes were accepted practices in the first half of this century, and were not associated with potential human health risks. (Report of Dr. Barbara Beck at 6–1; Report of Dr. Richard T. Dewling at 6–7). Clearly, Indiana Gas would not have gone to the expense of procuring extensive reports from two expert witnesses regarding the disposal of waste products if Indiana Gas had not disposed of any such waste products. Thus, as the policies at issue exclude damages arising from "waste products", the exclusion has been triggered.

■ Home next argues that Indiana Gas' claims are not within the "sudden and acci-

dental" exception to the pollution exclusion. The parties dispute the burden of proof on this issue. Home acknowledges that under Indiana law, insurers bear the burden of proving the applicability of a policy exclusion. However, Home argues that the burden of proof for an exception to a policy exclusion rests with the insured. The positions of both parties are supported by numerous cases, yet the Indiana courts have not spoken on this issue.

The courts in the Seventh Circuit also have not spoken on this precise issue. However, in *Gulf Insurance Company v. Tilley*, 280 F.Supp. 60 (N.D.Ind.1967), *aff'd*, 393 F.2d 119 (7th Cir.1968), this court held that a blanket exclusion and the exception thereto must be construed together to give meaning to the entire paragraph of the exclusion. 280 F.Supp. at 64. In the present case, this court holds that the most consistent way to allocate the burden of proof is to follow the traditional distinction between coverage clauses and exclusionary clauses. Because the "sudden and accidental" exception is part of an exclusionary clause, the insurer bears the burden of proving not only that the property damage at issue resulted from the discharge of pollutants, but also that the discharge was neither sudden nor accidental. *See New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162, 1182 (3rd Cir. 1991).

■ The next issue before the court is whether the pollution exclusion is inapplicable due to Indiana Gas' alleged lack of knowledge or expectation about the polluting characteristics of the discharge or release. Home has taken the position that if the substances discharged or released into the environment were in fact wastes or pollutants, the pollution exclusion applies without regard to Indiana Gas' awareness of whether the discharges were hazardous, or whether Indiana Gas was even the party who discharged the pollutants. Indiana Gas, however, argues that it did not believe (and had no reason to believe) that it was releasing pollutants into the environment, and the pollution exclusion should not apply for that reason. Indiana Gas also argues that it did not operate gas plants at five of the sites in this case,

but acquired those sites only after MGP operations had ceased and, thus, did not discharge or release any by-products or pollutants at those five sites.

The plain language of the pollution exclusion provides that the policy does not apply to damage arising out of *the discharge* of pollutants, unless such discharge is sudden and accidental. It seems completely clear that the only exception to the pollution exclusion is in the case of sudden and accidental discharges. There is simply no exception for intentional discharges that cause unexpected or unintended damages. This reading of the pollution exclusion is supported by ample case law. *See e.g., St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir.1994); *New Castle County v. Hartford Accident & Indem. Co.*, 970 F.2d 1267, 1272 (3d Cir.1992); *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 842 F.Supp. 575, 584–85 (D.D.C.1994, *aff'd sub nom. Charter Oil Co. v. American Employers' Ins. Co.*, 69 F.3d 1160 (D.C.Cir. 1995); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 810 F.Supp. 1406, 1411 (D.Del.1992); *Bureau of Engraving v. Federal Ins. Co.*, 793 F.Supp. 209, 212 (D.Minn.1992), *aff'd*, 5 F.3d 1175, 1177–78 (8th Cir.1993); *Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 781 F.Supp. 9, 17 (D.D.C.1991), *aff'd*, 995 F.2d 305 (D.C.Cir.1993).

Indiana Gas again relies on *Kiger* in support of its interpretation. In *Kiger*, the Indiana Supreme Court was called upon to determine whether the phrase "sudden and accidental" was ambiguous. The Court stated:

> If one considers the insurance industry's own interpretation of the contractual language, it becomes clear that there exists a lack of clarity (footnote omitted). The ambiguous phrase "sudden and accidental" was first added to insurance policies in the early 1970's, in response to a plethora of claims for damage caused by polluting industries. The industry claimed that its addition was a mere clarification. The drafters said that
>
>> coverage for pollution may not be provided in most cases under present policies because the damages could be said

to be *expected and intended* and thus would be excluded by the definition of occurrence, and, therefore, the adoption of an exclusion could be said to be a clarification, but a necessary one in order to avoid any question of intent.

Minutes of the Industrial Rating Board General Liability Governing Committee (March 17, 1970) (emphasis added) (quoted in Harwood et al., *The "Frivolity" of Policyholder Gradual Pollution Discharge Claims*, 5 Mealey's Ins.Lit.Rpts. No. 40 (August 1991)). ***In other words, the adding of the "sudden and accidental" language is nothing more than a "clarification" which made explicit the fact that the insurance did not cover those acts which are expected or intended.***

662 N.E.2d at 947–48 (emphasis added).

Although Indiana Gas cites to *Kiger* and points out that the Indiana Supreme Court relied on the "Minutes of the Insurance Rating Board" (incorrectly referred to in *Kiger* as the "Industrial Rating Board"), it is clear that *Kiger* does not support Indiana Gas' argument that its alleged lack of knowledge of the polluting characteristics of its wastes is relevant. Clearly, even after examining the "Minutes" the Indiana Supreme Court stated that the "clarification" made explicit the fact that the insurance did not cover those *acts* which are expected or intended. The Indiana Supreme Court did not focus on the word "damages" and did not hold that the damages resulting from an insured's intentional acts must be expected and/or intended. Nor is it likely that the Indiana Supreme Court would ever hold, as Indiana Gas suggests, "that the intent of the exclusion is to exclude only damage resulting from the insured's intentional discharge of a known pollutant." (Response brief at 15). Rather, it is clear that the focus is on the *act* of discharging wastes and pollutants and not on the *damage* caused by that act.

Likewise, there is no wording in the policies which suggests that the discharge must have been an act of the insured. The policy does not provide, as it easily could have, that the pollution exclusion does not apply to discharges that are "sudden and accidental from the standpoint of the insured." *See, e.g.,*

*Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co.*, 842 F.Supp. 575, 585 n. 15 (D.D.C.1994) (exception for "sudden happenings" not expected or intended "from the standpoint of the insured"), *aff'd sub nom. Charter Oil Co. v. American Employers' Ins. Co.*, 69 F.3d 1160 (D.C.Cir.1995). The exception to the pollution exclusion is only for discharges that are "sudden and accidental", without regard to the identity of the discharger. *Quaker State Minit–Lube v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1530–31 (10th Cir.1995); *St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1201–03 (1st Cir.1994); *Northern Ins. Co. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 194 (3rd Cir.1991); *Park–Ohio Indus., Inc. v. Home Indemnity Co.*, 975 F.2d 1215, 1222 (6th Cir.1992); *United States Fidelity & Guar. Co. v. George W. Whitesides Co.*, 932 F.2d 1169, 1170–71 (6th Cir.1991).

Indiana Gas has directed this court to numerous decisions in which the courts have relied on the drafting history of the exclusion to conclude that it excludes only the insured's intentional discharge of known pollutants. *See, e.g., Morton International, Inc. v. General Accident Insurance Co.*, 134 N.J. 1, 629 A.2d 831 (1993); *United States Fidelity & Guar. Co. v. Specialty Coatings Co.*, 180 Ill. App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (1989); *Buckeye Union Ins. Co. v. Liberty Solvents & Chems. Co.*, 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984). Home strongly objects to the holdings of these cases and argues that the "regulatory estoppel" theory adopted by those courts was expressly rejected by the *Kiger* Court which stated: "We are not adopting this understanding under a doctrine of 'regulatory estoppel' or any other theory." 662 N.E.2d at 948.

Generally, "regulatory estoppel" decisions are criticized for rewriting the terms of insurance contracts. *Landis v. American Interinsurance Exch.*, 542 N.E.2d 1351, 1353 (Ind.App.1989); *Mutual Sec. Life Ins. Co. v. Fidelity & Deposit Co. of Md.*, 659 N.E.2d 1096 (Ind.App.1995); *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind.App. 1980). *See also, Carrier Corp. v. Home Ins. Co.*, No. CV–88–352393–8 (Conn.Super.Ct. Oct. 31, 1994); *E.I. duPont de Nemours &*

*Co. v. Admiral Ins. Co.,* 1995 WL 562256 1995 Del.Super. LEXIS 398 (Del.Super.Ct. Aug. 23, 1995). As this court is prohibited from rewriting the terms of the contracts at issue, this court is precluded from adding the condition that the pollution exclusion does not apply to discharges that are sudden and accidental "from the standpoint of the insured." Clearly, the pollution exclusion in the contracts at issue applies unless the discharge is "sudden and accidental"; there is no other exception to the pollution exclusion.

■ Indiana Gas next shifts the focus of its argument to the issue of when has a "discharge" occurred. Indiana Gas claims that, at least with respect to the Shelbyville site, the wastes were placed in containment pits and were not simply dumped on the land. Indiana Gas argues that the leakage from these containment pits was "sudden and accidental", and thus the exception to the pollution exclusion applies. Indiana Gas cites to *Patz v. St. Paul Fire & Marine Ins. Co.,* 15 F.3d 699 (7th Cir.1994), in support of its argument. In *Patz,* the plaintiffs (who manufactured and painted farm equipment) encountered the problem of how to dispose of wastes generated as a by-product of painting. One of the wastes was water contaminated by phosphate. The plaintiffs' consultants suggested that the plaintiffs dig an open pit for the water. The idea, well accepted in the waste-disposal community at the time (early 1970s), was that the water would evaporate, leaving a deposit of phosphate solids that would rest at the bottom of the pit and could be easily removed and used as fertilizer. Because the soil where the pit was to be dug was highly compacted clay soil the water was expected to evaporate before it could permeate the soil, and so the soil beneath the pit would not be contaminated. The plaintiffs discontinued use of the pit in 1980 and filled it in the following year. However, in 1986 the Wisconsin Department of Natural Resources conducted an environmental audit which discovered groundwater contamination from the pit. The plaintiffs spent a substantial amount cleaning up the property, and sought to recover this amount from their insurance company.

When the insurance company invoked the pollution exclusion, the plaintiffs argued that the "sudden and accidental" exception applied and that coverage was appropriate. Under controlling Wisconsin law, the phrase "sudden and accidental" means "unintended and unexpected". *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (1990). Further, pursuant to *Just,* the proper reading of the pollution exclusion clause is to distinguish between an intentional act not intended to discharge wastes into the environment and an intentional discharge. Applying *Just* to the facts before it, the Seventh Circuit Court of Appeals held in *Patz* that since the plaintiffs' evaporation pit was a containment structure, despite its lack of artificial materials, the *discharge* was the leakage from that structure, which leakage was "sudden and accidental in the special sense of unintended and unexpected." 15 F.3d at 704. As "the only discharges were the unintended and unexpected consequences of the defective containers in which the pollutants had been placed", the exception to the pollution exclusion was triggered and the Seventh Circuit affirmed the district court's decision in favor of the plaintiffs.

Home strongly contends that the holding in *Patz* is not relevant to the present case. Home first points out that the pollution exclusion refers to discharges "into or upon land," not the subsequent migration that causes third-party damage. *See, e.g., Broderick Invest. Co. v. Hartford Accident & Indem. Co.,* 954 F.2d 601, 607–08 (10th Cir.) ("[W]hether BIC intended the waste to seep into the groundwater and cause damage after the initial discharges into the land … is irrelevant."); *Protective Nat'l Ins. Co. v. City of Woodhaven,* 476 N.W.2d 374, 377 ("It is clear that the discharge, dispersal, release, or escape to which both the exclusion and the exception refer is the initial discharge, dispersal, release, or escape into the atmosphere and not the subsequent migration.")

With respect to Indiana Gas' claim that the wastes were disposed of in clay bottomed pits, a natural containment structure, Home contends that the record in this case establishes that the MGP wastes were simply dumped into or upon the land. Indiana Gas'

own witness testified that "tars were placed on and in the ground regularly at gas plants." (Stegner Dep. at 177–78). Home further argues that even if *Patz* is applicable to the present case, Indiana Gas has pointed to the testimony of just one witness (Carl Kinder), who testified about just one of the nine sites at issue, who said that he believed that there was clay beneath the disposal pits at the Shelbyville site. Home points out that Kinder also testified that the discharges into the pits were done before his involvement with the Shelbyville site, and thus Kinder's belief that the clay bottom of the pits prevented migration of the wastes is irrelevant, and is also inadmissible hearsay (as he did not personally know whether the pits had clay bottoms).

This court finds Indiana Gas' reliance on *Patz* to be misplaced. It is clear that *Patz* was decided under Wisconsin law, and the Seventh Circuit was bound by the Wisconsin Supreme Court's decision in *Just*. Indiana Gas has not cited to any case from the Indiana Supreme Court that is analogous to *Just*. Moreover, it is apparent that the Seventh Circuit was not overly impressed with the *Just* decision, as the Court stated: "We cannot, of course, overrule *Just*, but we are not obliged to place the broadest possible interpretation on the decision." 15 F.3d at 704–05. It is also clear that it was the practice at the MGP plants to dump the wastes onto the land, even though some waste may have been dumped into pits. The court further notes that even though Kinder testified that he believed that the pits had clay bottoms, there is no evidence whatsoever that the sides of the pits were made of clay. Thus, even if wastes were placed into clay bottomed pits, the waste would necessarily touch the sides of the pits, which were presumably made of soil. As the waste was placed "upon the land" even when it was placed in pits, the waste was "discharged" at the time it was placed in the pits.

■ Indiana Gas also claims that *Patz* is relevant because the MGP wastes "suddenly and accidentally" escaped into the soil and groundwater from various man-made containment structures, *e.g.*, gas holders, oil tanks, tar separators, purifiers and storage tanks. Indiana Gas cites to the Prickett Report in support of its claims. However, as Home notes, the Prickett Report merely identifies areas of soil contamination that are possible sources of groundwater contamination. The Report does not offer an opinion as to how the soil became contaminated, and does not discuss the issue of releases from "man-made" structures.

As the only evidence of record shows that the discharges, etc., were not "sudden and accidental", this court rules that the exception to the pollution exclusion is not applicable. Further, as the pollution exclusion in the policies at issue in this motion is applicable in the instant case, summary judgment will be granted in favor of Home (and all joining defendants) on this issue.

*LONDON MARKET INSURERS' MOTION FOR SUMMARY JUDGMENT ON ALL POLICIES CONTAINING THE LONDON MARKET POLLUTION EXCLUSION*

■ The LMI pollution exclusion (NMA 1685) reads as follows:

This insurance does not cover any liability for:

(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(2) The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

(3) Fines, penalties, punitive or exemplary damages.

This Clause shall not extend this Insurance to cover any liability which would not have

been covered under this Insurance had this Clause not been attached.

In support of its motion for summary judgment, LMI argues that its pollution exclusion is clear and unambiguous and should be enforced according to its terms. Specifically, LMI addresses the decision in *American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind.1996), and argues that the decision does not require this court to find that the exclusion is ambiguous. LMI argues that the *Kiger* court did not construe the wording of its pollution exclusion, which potentially permits coverage for pollution arising out of happenings in the policy period which are "sudden, unintended and unexpected". LMI acknowledges that the Indiana Supreme Court found the phrase "sudden and accidental" to be ambiguous. 662 N.E.2d at 948. However, LMI argues that *Kiger* is distinguishable on two grounds.

First LMI argues that it is not a domestic insurer and was not a member of the Insurance Rating Board (incorrectly referred to in *Kiger* as the "Industrial Rating Board"), the minutes of which were cited by the *Kiger* Court to support its conclusion that the phrase "sudden and accidental" was ambiguous. Secondly, LMI argues that a construction of "sudden" as meaning "unexpected" would render its pollution exclusion meaningless. That is, the clause would read: "unexpected, unintended and unexpected".

Assuming that *Kiger* applies, and that the clause (as interpreted in favor of the insured) provides that happenings that are "unexpected, unintended and unexpected" are not excluded, it is clear that the "happenings" at the MGP sites were not unexpected or unintended. That is, the wastes were deliberately placed into and onto the ground. (See *supra* re: Home's Motion for Partial Summary Judgment on Pollution Exclusion). Thus, even construing the pollution exclusion in favor of Indiana Gas, the pollution exclusion is applicable, as the exception has not been triggered. Consequently, summary judgment will be granted in favor of LMI on this issue.

### Conclusion

For all of the foregoing reasons, partial summary judgment is hereby GRANTED in favor of Home (and the joining defendants), and LMI on the issue of the "pollution exclusions".